ENDORSED
FILED IN MY OFFICE THIS

JUL - 7 2011

*Juanita M. Duran*
CLERK DISTRICT COURT

MONICA BACA

STATE OF NEW MEXICO
COUNTY OF BERNALILLO
SECOND JUDICIAL DISTRICT COURT

TERYSA M. WELCH,

    PLAINTIFF,

vs.

**Case No. CV 2011 0 6 8 2 9**
**JURY REQUESTED**

CITY OF ALBUQUERQUE, a New Mexico Municipality; **RAYMOND SCHULTZ, ELIZABETH PAIZ, WILLIAM ROSEMAN, JOSEPH HUDSON, DAVID HUBBARD, ROBERT SMITH, CECIL KNOX, J.R. POTTER, KEVIN GAGNE, SUE NEAL JOHN DOES I-V,** Individually and as agents and employees of the City of Albuquerque,

    **DEFENDANTS.**

---

**COMPLAINT FOR DEPRIVATION OF CIVIL RIGHTS PURSUANT TO TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. SECTIONS 1983 AND 1985, AND THE NEW MEXICO HUMAN RIGHTS ACT**

---

    **COMES NOW** Plaintiff, Terysa M. Welch, by and through her counsel of record, **Aguilar & Aguilar, P.C.** (Esteban Aguilar, Sr., Esq. and Esteban Aguilar, Jr., Esq.) and files the following Complaint for violation of her civil rights pursuant to Title VII of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000e, et.seq.)("Title VII"), Civil Conspiracy to Commit Civil Rights Violations pursuant to 42 U.S.C. §§ 1983,

1985, and for violations of the New Mexico Human Rights Act, NMSA 1978, §28-1-1-15 ("NMHRA"). In support of this Complaint, Plaintiff alleges as follows:

## PARTIES, JURISDICTION AND VENUE

1.     Venue and jurisdiction is proper in the Second Judicial district as the individual Defendants are residents of New Mexico and Defendant City of Albuquerque is a municipality within New Mexico in Bernalillo County, and all the acts complained of occurred in the State of New Mexico, Bernalillo County.

2.     Upon information and belief, all Defendants named in Plaintiff's Complaint reside in the State of New Mexico.

3.     Plaintiff has properly exhausted her administrative remedies through the United States Equal Employment Opportunity Commission, charge number 543-2009-01521, and received a right to sue letter on April 8, 2011 in matter number DJ 170-49-0.

4.     Plaintiff Terysa M. Welch is a resident of Rio Rancho, Sandoval County, State of New Mexico.  At all times material hereto, Plaintiff was an employee of the City of Albuquerque Police Department ("APD"), and is a "person" as defined by Title VII and the Human Rights Act.  Plaintiff is female and is a covered employee within the meaning of Title VII and the NMHRA, and is a member of a protected class (sex/gender).

Complaint for Civil Rights Violations, Civil Conspiracy to Commit Civil Rights Violations, and
Violations of the New Mexico Human Rights Act
Page 2 of 39

5.     At all times material hereto, Defendant City of Albuquerque ("City") was a municipality and governmental entity within the State of New Mexico, and is an employer within the meaning of Title VII and the NMHRA.

6.     Defendant Raymond Schultz was at all times material hereto the Chief of Police for APD, employed by Defendant City of Albuquerque, and was acting in his capacity as Chief.

7.     Defendant Elizabeth Paiz was at all times material hereto a supervisor for APD and Defendant City of Albuquerque, and was acting in her supervisory capacity.

8.     Defendant William Roseman was at all times material hereto a supervisor for APD and Defendant City of Albuquerque, and was acting in his supervisory capacity.

9.     Defendant Joseph Hudson was at all times material hereto a supervisor for APD and Defendant City of Albuquerque, and was acting in his supervisory capacity.

10.     Defendant David Hubbard was at all times material hereto a supervisor for APD and Defendant City of Albuquerque, and was acting in his supervisory capacity.

Complaint for Civil Rights Violations, Civil Conspiracy to Commit Civil Rights Violations, and
Violations of the New Mexico Human Rights Act
Page 3 of 39

11.   Defendant Robert Smith was at all times material hereto a supervisor for APD and Defendant City of Albuquerque, and was acting in his supervisory capacity.

12.   Defendant Cecil Knox was at all times material hereto a supervisor for APD and Defendant City of Albuquerque, and was acting in his supervisory capacity.

13.   Defendant J.R. Potter and Kevin Gagne were at all times material hereto detectives employed by APD and Defendant City of Albuquerque and are "persons" as defined by Title VII and the NMHRA.

14.   Defendant Sue Neal was at all times material hereto an employee of the City of Albuquerque and is a "person" as defined by Title VII and the NMHRA.

15.   Defendants John Does I-V were at all times material hereto employees of APD and Defendant City of Albuquerque.

16.   Defendant City of Albuquerque is an employer within the meaning of Title VII and the NMHRA and is liable for the acts and omissions of its supervisors.

17.   Defendants Schultz, Paiz, Roseman, Hudson, Hubbard, Smith, Knox, Potter, Gagne and Neal are "persons" as defined by the NMHRA.

18.   Defendants Schultz, Roseman, Hubbard, Smith, Knox, Potter and Gagne are additionally joined as individuals acting under color of state law pursuant to 42 U.S.C. § 1983.

Complaint for Civil Rights Violations, Civil Conspiracy to Commit Civil Rights Violations, and
Violations of the New Mexico Human Rights Act
Page 4 of 39

## FACTUAL BACKGROUND AND ALLEGATIONS COMMON TO ALL COUNTS

19.     In October, 1997, Plaintiff Terysa M. Welch, a graduate of the University of Montana, began her career with Defendant City of Albuquerque as an officer of the Albuquerque Police Department.  Plaintiff Welch came from a family of law enforcement, with her grandfather, her father, and brother working in law enforcement, and from an early age she wished to follow in their footsteps and dedicate her life to service to her community.

20.     In 2002, Plaintiff Welch earned the rank of detective and by 2004, Plaintiff Welch had built and maintained an exemplary professional career, including but not limited to earning approximately thirteen (13) letters of commendation or appreciation, numerous interdepartmental awards for performance and physical fitness, and attended more than forty (40) professional development courses, the majority of which were non-required educational courses.

21.     In October 2004, Plaintiff Welch sought advancement within APD and applied for a position with APD's Repeat Offender Program ("ROP").  ROP is part of APD's Special Investigations Division (SID) tasked with locating and apprehending violent repeat criminals, and considered by employees of APD to be the elite task force at APD and the pinnacle of advancement for detectives at APD.

Complaint for Civil Rights Violations, Civil Conspiracy to Commit Civil Rights Violations, and
Violations of the New Mexico Human Rights Act
Page 5 of 39

22.    Plaintiff Welch competed for and earned a spot on the ROP team, outperforming most, if not all, of her male counterparts on all portions of the examination, including the physical fitness examination.  She was the only female detective on ROP, and one of only two female detectives in SID (out of approximately 60 detectives).  Upon information and belief, there were and are no female supervisors at any level in ROP or SID.

23.    At the outset of her appointment, numerous members of the ROP team were outspoken and did not want Plaintiff Welch to become part of the team because she was a female.  Defendant Kevin Gagne, a ROP detective, told a colleague shortly after Plaintiff Welch's appointment that "we got fucked, we had to take a skirt," and that "we don't want her."  Approximately the day of her arrival for her ROP position another detective said "what the fuck are you doing here?"  Upon information and belief, only one other woman had ever been appointed to the ROP team.  Upon information and belief she was treated disparately because of her gender, and had been forced to leave the ROP team.

24.    Between 2004 and 2007, Plaintiff Welch was continuously subjected to hostile and harassing behavior by her co-workers and supervisors.  Specifically, Defendant Robert Smith subjected Plaintiff Welch to continuous unwanted behavior, including unwanted touching, painful hugging, inappropriate sexual comments and innuendo about Plaintiff Welch's clothing, and comments about his

Complaint for Civil Rights Violations, Civil Conspiracy to Commit Civil Rights Violations, and
Violations of the New Mexico Human Rights Act
Page 6 of 39

genitals. Defendant Smith gave Plaintiff Welch several notes, letters, copies of articles, and other documents containing his hand-written messages to her, which were sexually suggestive and demeaning. Defendant Smith wanted Plaintiff Welch to call him "daddy." At the time, Plaintiff Welch was uncomfortable with Defendant Smith's conduct, but did not want to jeopardize her career or her opportunity for professional advancement by making complaints, so she continued to endure the treatment.

25.   Defendant Potter also subjected Plaintiff Welch to hostile and harassing behavior. Like Defendant Smith, Defendant Potter also made suggestive comments to Plaintiff Welch about his genitals, and on several occasions propositioned Plaintiff Welch and solicited her to participate in group sexual activity with Defendant Potter and his wife.

26.   Defendants Smith and Potter's sexually suggestive comments and conduct disgusted, offended, and demeaned Plaintiff Welch. This or substantially similar hostile and inappropriate behavior occurred on a consistent basis to Plaintiff Welch.

**DAVID MAES COMPLAINT**

27.   In approximately October 2007, Plaintiff Welch made a complaint to Defendant Robert Smith, her lieutenant, relating an incident with her fiancée, Officer David Maes. Plaintiff Welch was engaged to Off. Maes, who unbeknownst to her, was charged with kidnapping and raping one or more prisoners. After Maes's

Complaint for Civil Rights Violations, Civil Conspiracy to Commit Civil Rights Violations, and
Violations of the New Mexico Human Rights Act
Page 7 of 39

arrest, Plaintiff Welch was advised that her supervisors and co-workers at APD knew of the allegations prior to his arrest yet failed to notify her that her safety was in jeopardy. APD dismissed Plaintiff Welch's complaints without an investigation. Due to the lack of response, Plaintiff Welch believed that none of her co-workers or supervisors at APD or any person or persons with Defendant City of Albuquerque were concerned for her safety. She nonetheless continued with her work assignment.

28.  Plaintiff Welch was first advised of the Maes incident by Defendant Smith. He called Plaintiff Welch on her cell phone on approximately October 10, 2007 and asked if she was at her APD office. She was, and Defendant Smith told her to wait there. After he arrived, Defendant Smith grabbed her hand and led Plaintiff Welch to the parking lot.

29.  Once in the parking lot, Defendant Smith asked if she wanted coffee or lunch, and she said she wanted him to tell her what was going on because she believed something had happened to her brother, who was also employed by APD. Defendant Smith pulled her toward him and hugged her, squeezing her hard enough to impair her breathing. He told Plaintiff Welch he would "be pursuing" her if he wasn't married, and told her she was a "good catch." Defendant Smith then told Plaintiff Welch that her fiancé was going to be arrested and explained the details.

30.    Defendant Smith then tried to persuade Plaintiff Welch to take him to her house, which she continuously refused.    Plaintiff Welch felt humiliated and degraded by Defendant Smith's advances, particularly in light of the information he had just told her about her fiancée.   Plaintiff Welch left and ultimately traveled to Montana to be with her family.  While she was in Montana, Defendant Smith called her on numerous occasions.

## DISPARATE TREATMENT ON BASIS OF GENDER

31.    In late July 2009, Plaintiff Welch and her partner Det. Mike Hill, were told by Defendant Gagne, who was acting sergeant for David Hubbard, to report to the SID office at 9:30 a.m., and then from there they would go to the shooting range. A short time after 9:30 am, Defendant Hubbard called Plaintiff Welch on her radio phone and reprimanded her for not being at the range by 9:30 am, telling her she missed a team meeting.  Plaintiff Welch, who was with Det. Hill, explained their orders from Defendant Gagne, and Defendant Hubbard responded that she was not correct.

32.    On July 24, 2009 at a ROP team meeting, Defendant Hubbard gave Plaintiff Welch a formal written reprimand in the form of a "Punctuality Memo" for missing the team meeting at the range.  The letter also alleged that she had taken personal time off of work that was not approved.  She was told the letter would be put in her "hanging file." Det. Hill was not reprimanded—verbally or in writing—

Complaint for Civil Rights Violations, Civil Conspiracy to Commit Civil Rights Violations, and
Violations of the New Mexico Human Rights Act
Page 9 of 39

for the same incident even though he was absent at the team meeting as well. Det. Hill confirmed Defendant Gagne's orders.

33.    After receiving the Punctuality Memo, Plaintiff Welch told Defendant Hubbard she was being unfairly singled out for missing the meeting, raised several concerns that her work environment at ROP had become increasingly hostile, and that she felt discriminated against because she was a woman. Plaintiff Welch also addressed the time she was alleged to be off without prior approval and gave Defendant Hubbard paperwork showing that he had personally pre-approved the time off. Defendant Hubbard refused to address the incident further, so Plaintiff Welch requested a meeting with Defendant Smith, which was also ignored by Sgt. Hubbard.

34.    Two days later, Plaintiff Welch went to SID to meet with Defendant Smith and address her concerns over Defendant Hubbard's treatment of her, as well as her increasingly hostile work environment. Instead of addressing her concerns, Defendant Smith verbally berated her and told her he would not accept her complaints against Defendants Hubbard or Gagne. In this meeting, Plaintiff Welch felt physically threatened and intimidated by Defendant Smith when she asked to leave his office after his inappropriate treatment of her began, and she did not feel like she was able to leave his office freely.

35.   The following day, Plaintiff Welch called Defendant Joseph Hudson, her Commander at APD, to explain what had happened and to again attempt to remediate her work environment.   Plaintiff Welch also raised additional safety concerns with her co-workers on ROP because several of her colleagues were obese and incapable of passing the minimum physical fitness requirements set forth by the department. Plaintiff Welch was concerned that their poor health placed her safety at issue while surveilling and apprehending suspects, which also placed the general public at danger.   She advised Defendant Hudson that Defendant Smith was friends with Defendant Hubbard and refused to enforce the department's minimum fitness guidelines to the ROP team because he knew Hubbard could not pass the guidelines.   Plaintiff Welch explained that she planned on filing a formal complaint for her grievances against Defendants Smith, Hubbard, Gagne and Potter.

36.   Defendant Hudson told Plaintiff Welch that he had concerns about the actions of Defendants Smith, Hubbard, Gagne and Potter, but that he would not make any changes or otherwise address her concerns with those individuals.   He told her that Defendant Smith would likely be the next commander, and that if she wanted to fix the situation she needed to "throw herself on the sword" and tell Defendant Smith she was the one who was wrong.   Defendant Hudson then told Plaintiff Welch she should wait for Defendant Smith to "fix" the situation.

37.   Plaintiff Welch responded to Defendant Hudson that she had done nothing wrong and that she would not say otherwise.  Defendant Hudson then threatened Plaintiff Welch, telling her that she "would not win an EEOC complaint," and if questioned he would deny his statements.  A few days later, Plaintiff Welch was called into a ROP meeting and confronted by Defendants Potter and Gagne in Hubbard's office.  Defendants Potter and Gagne verbally accosted her and were physically intimidating, including overtly violent behavior.

38.   The conduct of Defendants Potter and Gagne was extremely threatening and intimidating to Plaintiff Welch to the point where she felt concerned for her physical safety.  Defendants Potter and Gagne demanded that Plaintiff Welch tell them about her conversations with her chain of command, including threatening her in order to coerce her to tell them.  Plaintiff Welch refused, and Defendants Potter and Gagne eventually stormed out of the office.  A few days following this incident, Plaintiff Welch filed a formal complaint with the federal EEOC.

## EEOC COMPLAINT

39.   On August 24, 2009, Plaintiff Welch filed a formal complaint with the federal EEOC office in Albuquerque for consistent and systemic abuses of department policies, as well as the sexually and physically harassing behavior, the disparate treatment she was forced to endure by her co-workers and supervisors, and the retaliatory behavior by her chain of command and her co-workers.  Plaintiff

Complaint for Civil Rights Violations, Civil Conspiracy to Commit Civil Rights Violations, and
Violations of the New Mexico Human Rights Act
Page 12 of 39

Welch also outlined approximately 16 pages of specific details in her complaint, most of which she had not raised with her chain of command out of fear of retaliation or physical violence.

## TREATMENT FOLLOWING FILING OF EEOC COMPLAINT

40.   Following the filing of Plaintiff Welch's EEOC complaint, the disparate treatment from her co-workers and supervisors got significantly worse, not better. After filing the complaint, she contacted Lt. Doug West in the internal affairs department at APD to address her complaints.  She provided him with a copy of her complaint, and Lt. West assured her he would keep the complaint confidential and address them directly with Defendant Raymond Schultz, APD's Chief of Police, the following day.

41.   However, within two days of the filing of her complaint and her meeting with Lt. West, numerous co-workers, including several in other divisions at SID, approached Plaintiff Welch and asked her about her EEOC complaint.   Their questions make it clear that the complaint was not kept confidential by either Lt. West or Defendant Schultz, and was instead leaked or intentionally disseminated to members of the department.  Specific details of her complaint soon appeared on the department's "Eye on Albuquerque" blog on the internet.

42.   After details of her complaint had surfaced, numerous employees, including some supervisors, confided in Plaintiff Welch that the majority of the

Complaint for Civil Rights Violations, Civil Conspiracy to Commit Civil Rights Violations, and
Violations of the New Mexico Human Rights Act
Page 13 of 39

detectives at ROP were against her appointment to ROP from the beginning, especially Defendant Gagne.

43.    Over the next several months, Plaintiff Welch's work environment continued to deteriorate. Plaintiff Welch's chain of command at ROP implemented new standard operating procedures, which the ROP members were told were punitively implemented and would stay in effect until Plaintiff Welch left ROP. Plaintiff Welch was sent to mandatory team workouts at various locations across town to discover after arriving that she was the only member who had been ordered to show up and there was no workout. She was removed from numerous existing surveillance assignments on targets that she had been working on for months and placed on lower level assignments.

44.    On at least one occasion, Plaintiff Welch had located a dangerous, presumably heavily armed suspect that APD had targeted for some time. When Plaintiff Welch called on her ROP/SID radio for back-up, her team members, including but not limited to Defendants Gagne and Potter, refused to come and provide her back-up. Ultimately, a colleague from another assigned division showed up and assisted Plaintiff Welch with the apprehension of her target. The actions of Defendants Gagne, Potter, and presumably, the acting supervisors on that day, placed Plaintiff Welch's life, as well as the lives and safety of the residents of the City of Albuquerque, in significant and unnecessary jeopardy.

45.     Additionally after filing her EEOC complaint, Plaintiff's ROP supervisors began assigning her more dangerous assignments alone, when her male colleagues were teamed together and assigned targets that were not as high risk.  Through the continued actions of her supervisors and co-workers, Plaintiff Welch was shunned for raising her legitimate safety and policy concerns in her EEOC complaint, and every day she felt threatened and unwelcome by her fellow team members.

46.     Following the filing of Plaintiff's EEOC complaint, APD suspended Defendant Smith on October 22, 2009 for eight (8) hours, and issued a written reprimand to Defendant Hubbard on October 23, 2009, stemming from two allegations in Plaintiff's EEOC complaint.  Defendant Hubbard subsequently made a direct threat to the ROP team as a whole, which was aimed directly at Plaintiff Welch, that said "it was a little unpleasant for me, but it's gonna be a whole lot worse for you."  No Defendant was disciplined for any of the disparate, harassing or retaliatory acts in violation of Title VII or the NMHRA

47.     Upon information and belief, one or more of Plaintiff Welch's colleagues observed the treatment of Plaintiff Welch and protested to Defendants Smith and Hudson.   Upon information and belief, those complaining individuals were retaliated against for their protests.

Complaint for Civil Rights Violations, Civil Conspiracy to Commit Civil Rights Violations, and
Violations of the New Mexico Human Rights Act
Page 15 of 39

48.   As a result of the acts and omissions of all Defendants, Plaintiff Welch began experiencing extreme physical and emotional distress requiring medical treatment and counseling.

## SPECIFIC RETALIATORY INCIDENTS, CONSPIRACY

49.   In November 2009, a memo was placed in Plaintiff Welch's public mailbox at the SID office from Defendant Hudson alleging that while on a surveillance assignment, she had left other ROP members, specifically, Defendant Gagne, in the middle of vehicular surveillance, and that in a separate incident she had also exposed Defendant Potter to danger while conducting a residential search.   The allegations placed her employment in jeopardy, as Defendant Hudson's memo alleged she had made an "obvious and conscience decision" to expose Defendant Potter and to leave the surveillance.

50.   Both Defendants Potter and Gagne were targets of Plaintiff Welch's EEOC complaint three months earlier, and conspired to file their complaints with Defendant Hudson.   Their allegations were baseless, aimed at retaliating against Plaintiff Welch for her complaints against them, and either removing her from ROP or terminating her employment with APD.   Plaintiff Welch responded to each allegation in writing, and she was contacted by Defendant Deputy Chief Elizabeth Paiz in approximately December 2009 about the complaints.   Plaintiff Welch met with Defendant Paiz on December 4, 1010 and addressed her concerns verbally and

Complaint for Civil Rights Violations, Civil Conspiracy to Commit Civil Rights Violations, and
Violations of the New Mexico Human Rights Act
Page 16 of 39

in writing. Defendant Paiz assured Plaintiff Welch that changes would be made at ROP and the conduct of its members was not acceptable.

51. On December 9, 2010 while working at SID, Plaintiff Welch left her cubicle and encountered Defendant Smith walking toward her. Defendant Smith puffed out his chest in an overtly aggressive manner and dipped his shoulders, neck and head toward Plaintiff Welch as he passed her in the hallway, causing Plaintiff Welch to fall into the wall to avoid being struck by Defendant Smith. Plaintiff Welch felt extremely threatened by Defendant Smith's intentionally hostile and intimidating actions.

52. Despite her meeting with Defendant Paiz, no personnel changes were made at ROP and the harassing behavior at continued. On December 10, 2009, the day after Defendant Smith attempted to run her over in the hallway, all SID employees were ordered to attend an EEOC training seminar. Plaintiff Welch, as well as another female detective from SID—who had also filed an employment complaint with the EEOC—were present at the training. Plaintiff Welch sat with the female detective, and both were made to feel that the class was aimed at punishing Plaintiff Welch and the other female detective for filing their complaints.

53. The training seminar was conducted by Defendant Sue Neal, an employee with Defendant City of Albuquerque's human resources department, who humiliated Plaintiff Welch and her colleague in front of their peers by citing specific

examples contained in their individual complaints and attempting to trivialize and downplay them. Defendant Neal repeatedly used profane language when referencing the allegations. Several attendees asked Defendant Neal if the department was holding the training to "cover their ass" and for "punitive reasons." Defendant Neal admitted this, and said that if the department "provides training and makes policy requirements known, that the liability against the department can be dismissed and the responsibility for the mistakes that supervisors make can be the supervisor's sole responsibility."

54.    Defendant Neal's admissions evidence a prior "meeting of the minds" by supervisors, the City of Albuquerque human resources department, and/or the City's legal department prior to the training to punish Plaintiff Welch, and apparently her female colleague, for filing their EEOC complaints and to attempt to deter other employees of the City of Albuquerque who may be aggrieved from challenging their employment conditions or alerting others as to past or ongoing violations of department policy.

55.    The day after the training, someone at SID placed a transfer request form Plaintiff Welch's public inbox. Plaintiff Welch immediately contacted Defendant Paiz and told her about the transfer form, the extreme hostility she felt in her work environment, her increasing fear for her safety while on the job, and the degrading and retaliatory nature of the training class. Defendant Paiz told Plaintiff Welch

that she could not have her working under those conditions, and pursuant to APD's union contract, she placed Plaintiff Welch on temporary duty in APD's Burglary Division. Plaintiff Welch did not request this status or a transfer, and made it clear to Defendant Paiz that she had earned her position on ROP and that the chain of command at APD needed to address her situation and the specific conduct of her co-workers and immediate supervisors. Defendant Paiz assured her the issues would be addressed and that she needed "more time."

## TEMPORARY DUTY ASSIGNMENT

56.     Pursuant to the police officer union's collective bargaining agreement with Defendant City of Albuquerque, a temporary assignment cannot last longer than forty-five (45) days. However, Plaintiff Welch's temporary assignment lasted approximately fourteen (14) months. In April 2010, at the end of her first 45-day temporary assignment, Plaintiff Welch's cubicle at SID was cleaned out without her knowledge or permission, and all of her personal items were placed in boxes or bins. She asked about her employment status on several occasions and was never provided with an answer. As a result of the temporary assignment, Det. Welch was deprived of numerous overtime opportunities and accrual of benefits.

## EEOC INVESTIGATION

57.     While she was on temporary status, the EEOC conducted an extensive investigation into Plaintiff Welch's complaint.    The investigation lasted

Complaint for Civil Rights Violations, Civil Conspiracy to Commit Civil Rights Violations, and
Violations of the New Mexico Human Rights Act
Page 19 of 39

approximately 16 months, and included interviews with Plaintiff Welch's chain of command. On December 14, 2010, the EEOC returned a finding of probable cause of harassment based on her gender, hostile work environment, and retaliation in violation of Title VII. On April 8, 2011, the United States Department of Justice issued a right to sue letter to Plaintiff Welch.

## ADDITIONAL ACTS OF RETALIATION FOR EEOC COMPLAINT, CONSPIRACY

58. In addition to Defendant Gagne and Potter's retaliatory conspiracy to punish Plaintiff Welch for filing her EEOC complaint, upon information and belief, Defendants Schultz, Roseman (who was the new lieutenant in charge of ROP following Smith's retirement in 2010), and Hubbard, in connection with Defendants Smith (who had at that time retired from APD) and Gagne, conspired to target Plaintiff Welch in order to find any possible violation that she may commit to implement formal employment proceedings against her. This conspiracy was to punish her for filing her EEOC complaint and speaking out against Defendants' systemic, unlawful and discriminatory employment practices, as well as her supervisors' numerous policy violations.

59. Upon information and belief, Defendants Schultz, Roseman, Hubbard, Smith, ordered Defendant Gagne, and possibly other ROP detectives, to begin surveilling Plaintiff Welch. On several occasions, Plaintiff Welch and her brother

observed Defendant Gagne's department issued vehicle surveilling their Rio Rancho, New Mexico home both during and after defendants' work hours. Defendant Gagne's presence at her house made Plaintiff Welch fear for her safety because she "did not know what Gagne was capable of," and she did not want to sleep at home or have friends visit her at home out of fear.

60.    In October 2010, Defendant Gagne, in connection with Defendant Roseman, submitted a complaint to APD's internal affairs division ("IA"), alleging that Plaintiff Welch had purchased a 12-pack of beer at a Walgreens near her home in Rio Rancho after hours and used her unmarked City issued vehicle to transport it on October 12, 2010.  On October 26, 2010, the City issued a target letter citing violations of the City's take home vehicle policy, and opened an investigation into the allegations.    Upon information and belief, the IA complaint occurred contemporaneously with the EEOC's interview of Defendant Smith.

61.    The IA investigator was Defendant Cecil Knox, a sergeant with the IA division, who joined the conspiracy following the submittal of the IA complaint by Defendants Gagne and Roseman.  The "investigation" consisted solely of three separate interviews between October and December 2011 (including one interview on December 27, 2010 while Plaintiff Welch was on vacation, in which Defendant Knox gave her approximately three-day's notice).  Prior to the first interview,

Defendant Knox advised Plaintiff Welch that Defendant Gagne had filed the charge against her.

62.     Prior to the start of Defendant Knox's interviews (two of which occurred after the EEOC's notice of probable cause of December 14, 2010), Plaintiff Welch requested, but was denied, any opportunity to discover the specific details regarding the allegations.  Plaintiff Welch requested, but was denied, the opportunity to review either the actual evidence the department claimed it was using against her, or a general description of the evidence offered against her, despite repeated requests.  Plaintiff Welch had not committed any criminal violations, either expressly or impliedly, and the denial of any opportunity to present a meaningful defense, upon information and belief, is in direct violation of Defendant APD's policies and procedures governing internal affairs investigations.

63.     Plaintiff Welch had two representatives present with her, and Defendant Knox presented each with purported guidelines he expected the representatives to follow.  One of Plaintiff's representatives was the police union representative who protested the guidelines, reminding Defendant Knox that the guidelines were for civilian interviews and not applicable per the guidelines in the collective bargaining agreement.  Defendant Knox berated the union representative and forced him to abide by the arbitrary guidelines.

Complaint for Civil Rights Violations, Civil Conspiracy to Commit Civil Rights Violations, and
Violations of the New Mexico Human Rights Act
Page 22 of 39

64.    In each of the interviews (none of which lasted longer than 15 minutes) substantially the same questions were asked.    Plaintiff Welch did not deny purchasing a 12-pack of beer, as she was off-duty and may have done so.  Plaintiff Welch advised that there was nothing inherent in the purchase of beer after hours that would make the alleged incident memorable and that purchasing alcohol while off-duty was not a crime or violation of any City Code.   Plaintiff Welch further advised she certainly did not remember transporting alcohol in her unmarked, City owned vehicle.    In each of the interviews, Defendant Knox was overbearing, degrading, harassing, and questioned Plaintiff Welch's ability as a detective because she did not admit transporting the beer per the allegations in the complaint. During the interview, the union representative noted Defendant Knox's conduct and improper questioning, advising him that Plaintiff Welch's employment rights were being violated.    Defendant Knox interrupted the union representative and threatened to kick him out of the interview if he "continued to interrupt." Following the first interview, the union representative further objected to Defendant Knox's conduct and manner of questioning on behalf of Plaintiff Welch, and Defendant Knox kicked the union representative out of his office.

65.    In the first interview, Plaintiff Welch asked Defendant Knox on several occasions whether Defendant Gagne had been responsible for the complaint against her, as Defendant Knox had so advised her off the record prior to the interview.

Complaint for Civil Rights Violations, Civil Conspiracy to Commit Civil Rights Violations, and
Violations of the New Mexico Human Rights Act
Page 23 of 39

Defendant Knox confirmed Defendants Gagne and Roseman were responsible for the complaint, then said that the investigation was "ordered from the top" and that Defendant Gagne was not to be harassed.

66.    Upon information and belief, Defendant Schultz, in connection with Defendant Roseman, Smith and/or Gagne conspired with Defendant Knox to formulate the questions asked and pose them in a manner that was overbearing, degrading, harassing, and designed to humiliate and punish Plaintiff Welch for filing her EEOC complaint.   Additionally, Defendants Schultz, Roseman, Smith, and/or Gagne, along with Defendant Knox, held three separate interviews where substantially the same questions were asked, to harass and otherwise punish Plaintiff Welch for filing her EEOC complaint.

67.    In the first two interviews, Plaintiff Welch also made verbal requests to see the evidence presented against her so she could properly address the allegations, but Sgt. Knox denied the requests.  During the third interview, Plaintiff Welch was shown Walgreens surveillance video showing her, in fact, purchasing the beer and she was shown copies of cash register receipts, but there was no evidence presented that she transported the alcohol in her unmarked city owned vehicle. APD's possession of the Walgreens surveillance video is evidence that the conspirators went through considerable effort and utilized department resources in

Complaint for Civil Rights Violations, Civil Conspiracy to Commit Civil Rights Violations, and
Violations of the New Mexico Human Rights Act
Page 24 of 39

order to foster their retaliatory actions against Plaintiff Welch, even though Plaintiff Welch had committed no criminal actions.

68.    Minimally, one or more members of the ROP team who were ordinarily tasked with tracking and apprehending the most dangerous repeat criminal offenders in the City of Albuquerque, instead spent time, effort and expense of the taxpayers of the City of Albuquerque targeting Plaintiff Welch to punish and retaliate against her for filing her EEOC complaint—time, effort and resources that were supposed to be spent targeting dangerous repeat offender criminals.

69.    Defendant Schultz issued a pre-disciplinary notice on January 20, 2011, advising Plaintiff Welch that she would be suspended for eighty (80) hours and her take-home privileges revoked for fourteen (14) days, which Defendant Shultz noted was based solely on a typewritten summary of the Welch interviews by Defendant Knox.  Additionally, Plaintiff Welch was punished for "conduct both on and off-duty," and was alleged to have either interfered with criminal or administrative investigations, assigned tasks, or duty assignments of another, directly or indirectly attempted to secure the withdrawal or abandonment of a complaint or charges, or conducted a criminal or administrative follow-up investigation outside the scope of her assignment.  These allegations were not in the October 2010 target letter, nor was it made known to Plaintiff Welch at any time during the three arbitrary IA

Complaint for Civil Rights Violations, Civil Conspiracy to Commit Civil Rights Violations, and
Violations of the New Mexico Human Rights Act
Page 25 of 39

interviews, are false, and designed at punishing Plaintiff Welch for filing her EEOC complaint.

70.     The punishment and conduct of the IA investigation against Plaintiff Welch was retaliatory and punitive in nature, as there were at least two incidents involving male officers who admitted purchasing and transporting alcohol in marked units between October 2010 and February 2011, yet they were only warned by their supervisors (one verbal, one written). Neither officer was suspended or had his take home vehicle privileges suspended. At least one of these incidents occurred after issuance of the pre-disciplinary notice to Plaintiff Welch by Defendant Schultz, who was directly involved with one of the complaints against the male officers. Defendant Schultz did not discipline the male officer for the City Code violation.

71.     On February 10, 2011, Defendant Schultz held a pre-disciplinary "hearing" designed to comply with the *Loudermill* decision (*Cleveland Bd. Of Educ. V. Loudermill*, 470 U.S. 532 (1985)), despite full knowledge of his conspiracy to punitively punish and deprive Plaintiff Welch for filing her EEOC complaint. Defendant Schultz ultimately reduced Plaintiff Welch's suspension to forty (40) hours (24-hours held in abeyance for six months), but upheld the vehicle suspension in a final decision to discipline on February 10, 2011. As a direct and proximate result of the pre-textual, punitive punishment, Plaintiff Welch has lost wages and benefits, and is ineligible to promote for a minimum of one year. The discipline also

means that Plaintiff Welch has lost any opportunity to advance her career within APD.

## SECOND EEOC COMPLAINT, IPRA COMPLAINT

72.    Following the commencement of the first IA interview in November 2010, the federal EEOC (through counsel) monitored Defendant City of Albuquerque's conduct and after the Chief's Final Decision to Discipline was issued in February 2011, opened a second investigation into Defendant City of Albuquerque for additional violations of Title VII. Upon information and belief, that investigation is still ongoing.

73.    On November 2, 2010, Plaintiff Welch, by and through her undisclosed counsel, submitted numerous informational requests pursuant to the New Mexico Inspection of Public Records Act.  To date, Defendant City of Albuquerque has willfully refused to substantively respond to any of the requests.  On March 31, 2011, Plaintiff Welch filed an IPRA complaint against Defendant City of Albuquerque in the Second Judicial District Court, matter number CV-202-2011-03692. The City answered the complaint on May 6, 2011, acknowledging that the majority of the information was not produced, but alleged simply that the information was requested by Aguilar & Aguilar, P.C., Plaintiff Welch's counsel, and not her directly.

Complaint for Civil Rights Violations, Civil Conspiracy to Commit Civil Rights Violations, and
Violations of the New Mexico Human Rights Act
Page 27 of 39

**PLAINTIFF WELCH'S EMPLOYMENT PLACEMENT, SYSTEMIC PRACTICES**

74.   Despite repeated requests during the 14-month period she was on temporary status, APD refused to make a decision regarding her placement. Defendant Paiz was eventually replaced as Deputy Chief by Paul Feist, who permanently assigned her to the Burglary Unit on March 14, 2011. In any event, D.C. Feist permanently reassigned Plaintiff Welch to APD's burglary unit, despite her requests to remain in her rightfully earned position at ROP. To date, none of the Defendants have made any changes at ROP or elsewhere in SID, and no disciplinary proceedings have been brought against anyone at APD resulting from the disparate and discriminatory treatment of Plaintiff Welch.

75.   Following her re-assignment to the Burglary Unit, Plaintiff Welch was advised by Sgt. Heckroth (one of the subjects in her EEOC complaint) that she had 24-hours to return SID issued inventory, which she did by April 1, 2011. On April 1, 2011, four boxes of items that had been removed from her desk in 2010 were returned to her, which included a family photo album. The first photo of Plaintiff Welch's album had been replaced with a picture of her waving "good bye," along with a loop of shoelace-type material tied in a manner intended to represent a "hangman's noose," and numerous pieces of garbage. Plaintiff Welch does not know

who placed these items in her box, but she felt threatened for her life upon finding the items.

76. Upon information and belief, Plaintiff's brother, an officer at APD, applied for a detective position in APD's burglary unit following the filing of Plaintiff's EEOC complaint. Plaintiff's brother was denied the opportunity to apply for the position. When he asked about the basis for the denial he was told "ask your sister."

77. Upon information and belief, the harassing, discriminatory, and retaliatory employment practices implemented against Plaintiff Welch on the basis of her gender and the filing of her EEOC complaint are systemic practices condoned, fostered, encouraged, or otherwise promoted by Defendant City of Albuquerque and APD's administration, and other officers have been subjected to the same treatment based on their gender, or after protesting unlawful policies, procedures, or practices.

## COUNT I:  CIVIL RIGHTS VIOLATIONS PURSUANT TO TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. §§ 2000e, et. seq.

78. Plaintiff incorporates Paragraphs 1-77 as though fully set forth herein.

79. Plaintiff Welch is a covered employee and, as a female, member of a protected class within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et.seq.

80. Defendant City of Albuquerque is an employer within the meaning of Title VII, that employs more than five-hundred (500) employees pursuant to 42 U.S.C. § 1981a(b)(3)(D).

81. Defendants Schultz, Paiz, Roseman, Hudson, Hubbard, Smith, and Knox are supervisors employed by Defendant City of Albuquerque and at all times material to the allegations in this complaint were acting in their supervisory capacity. John Does I-V may be supervisors employed by Defendant City of Albuquerque and at all times material to the allegations in this complaint were acting in their supervisory authority. Additionally, Defendant Gagne was acting as a supervisor at all times material to the allegations in this complaint. Pursuant to Title VII, Defendant City of Albuquerque is responsible for the acts and omissions of its supervisors.

82. As an APD employee, Plaintiff Welch was subjected to discriminatory employment practices on the basis of her gender by her co-workers and supervisors, including but not limited to sexual and physical harassment and intimidation, disparate treatment, shunning by her co-workers and supervisors, hostile and dangerous work environment, as more fully set forth by the acts and omissions of Defendants Schultz, Paiz, Roseman, Hudson, Hubbard, Smith, Knox, Potter and Gagne in Paragraphs 19-77.

83.     Plaintiff Welch was further subjected to unlawful retaliation in violation of Title VII based on her opposition to the City of Albuquerque's discriminatory and unlawful employment practices after notifying her supervisors of the practices and filing an EEOC complaint, as more fully set forth in Paragraphs 19-77.

84.     Defendant City of Albuquerque condoned, fostered, encouraged, or otherwise promoted the unlawful discriminatory employment practices that Plaintiff Welch (and others at APD) continued to be subjected to, including but not limited to the practice of retaliating against any employee who opposes these unlawful discriminatory practices.

85.     As a proximate cause of the actions of Defendant—by and through its supervisors Defendants Schultz, Paiz, Roseman, Hudson, Hubbard, Smith, Knox and acting supervisor Gagne—as alleged in Paragraphs 19-77 of this complaint, Plaintiff Welch suffered damages, including but not limited to lost pay, loss of opportunity for advancement or job placement, professional reputation, past and future medical and counseling expenses, emotional distress, humiliation, degradation, indignation, fear, intimidation, frustration, helplessness, anguish, embarrassment, and loss of enjoyment of life.

86.     Pursuant to Title VII and 42 U.S.C. § 1988(b-c), Plaintiff Welch is entitled to her reasonable attorney's fees and expert witness fees.

WHEREFORE, Plaintiff requests compensatory damages against Defendant City of Albuquerque in an amount to be determined at trial of this case, all of her reasonable attorney's fees, costs and expert witness fees as provided by law, and any other relief the Court deems just and proper.

## COUNT II: CONSPIRACY TO COMMIT CIVIL RIGHTS VIOLATIONS PURSUANT TO 42 U.S.C. §§ 1983, 1985—RAYMOND SCHULTZ, WILLIAM ROSEMAN, DAVID HUBBARD, CECIL KNOX, ROBERT SMITH, J.R. POTTER, KEVIN GAGNE, and JOHN DOES I-V

87.    Plaintiff incorporates Paragraphs 1-86 as if fully set forth herein.

88.    Section 1983 creates a federal cause of action for the deprivation, under color of state law, of a citizen's rights, privileges or immunities secured by the Constitution and laws of the United States.

89.    Defendants Schultz, Roseman, Hubbard, Smith, Knox, Potter, Gagne, and John Does I-V conspired together as more fully set forth in Paragraphs 19-77 for the purpose depriving Plaintiff Welch of valid, constitutionally protected property rights, including but not limited to impeding, hindering, obstructing and otherwise denying her substantive and procedural due process in violation of Section 1983 and 1985, depriving her of wages, benefits, and the opportunity for career advancement or promotion, and terminating her employment.

90.    The conspiracy(ies) of Defendants Schultz, Roseman, Hubbard, Smith, Knox, Potter, Gagne and John Does I-V constitute a "meeting of the minds"

Complaint for Civil Rights Violations, Civil Conspiracy to Commit Civil Rights Violations, and
Violations of the New Mexico Human Rights Act
Page 32 of 39

designed to punish and retaliate against Plaintiff Welch for filing her EEOC complaint, and ultimately, designed to force Plaintiff Welch to leave her position on the ROP team and/or employment with APD, and to discourage other officers and employees of APD from protesting any of the policies and procedures of APD, Defendant City of Albuquerque, or Defendants Schultz, Roseman, Hubbard, Smith, Knox, Potter and Gagne individually.

91.    As a proximate cause of the actions of Defendant, by and through its supervisors Defendants Schultz, Roseman, Hubbard, Smith, Knox, Potter, Gagne, and John Does I-V as alleged in Paragraphs 19-77 of this complaint, Plaintiff Welch suffered damages, including but not limited to lost pay, loss of opportunity for advancement or job placement, professional reputation, past and future medical and counseling expenses, emotional distress, humiliation, degradation, indignation, fear, intimidation, frustration, helplessness, anguish, embarrassment, and loss of enjoyment of life.

92.    The actions of Defendants Schultz, Roseman, Hubbard, Smith, Knox, Potter, Gagne, and John Does I-V as alleged in Paragraphs 19-77 were intentional, willful, wanton, obdurate, and conducted with malice and reckless indifference, and as such Plaintiff is entitled to an award of punitive damages against these Defendants.

Complaint for Civil Rights Violations, Civil Conspiracy to Commit Civil Rights Violations, and
Violations of the New Mexico Human Rights Act
Page 33 of 39

93.    Pursuant to Section 1983 and 42 U.S.C. § 1988(b-c), Plaintiff Welch is entitled to her reasonable attorney's fees and expert witness fees.

**WHEREFORE**, Plaintiff Welch requests compensatory damages against Defendants Raymond Schultz, William Roseman, David Hubbard, Robert Smith, Cecil Knox, J.R. Potter, Kevin Gagne, and John Does I and V and punitive damages against each of these Defendants in an amount to be determined at trial.  Plaintiff Welch further requests all of her reasonable attorney's fees, costs and expert witness fees as provided by law, and any other relief the Court deems just and proper.

## COUNT III: CIVIL RIGHTS VIOLATION PURSUANT TO NEW MEXICO HUMAN RIGHTS ACT, NMSA 1978 § 28-1-1, et. seq.-DEFENDANT CITY OF ALBUQUERQUE

94.    Plaintiff incorporates Paragraphs 1-93 as if fully set forth herein.

95.    Defendant City of Albuquerque is an employer as defined by the NMHRA, NMSA 1978, § 28-1-2(B).

96.    Plaintiff Welch is a "person" as defined by the NMHRA, NMSA 1978, § 28-1-2(A).

97.    Defendants Schultz, Paiz, Roseman, Hudson, Hubbard, Smith, Knox, Potter, Gagne, Neal, and John Does I-V are "persons" as defined by the NMHRA, NMSA 1978, § 28-1-2(A).

98.    Pursuant to the NMHRA, Defendant City of Albuquerque is responsible for the acts and omissions of its employees and supervisors.

99.    Defendant City of Albuquerque committed one or more unlawful discriminatory practices as an employer against Plaintiff Welch in violation of the provisions of the NMHRA, NMSA 1978, § 28-1-7(A)-(I), including but not limited to discriminating against Plaintiff in matters of terms, conditions or privileges of employment because of sex (gender/female), and engaging in threats, reprisal or discrimination against Plaintiff for filing a complaint with the EEOC.

100.    Defendant City of Albuquerque, expressly or impliedly, condoned, fostered, encouraged, or otherwise promoted the discriminatory employment practices as more fully enumerated in Paragraphs 19-77 above, through the acts of its employees and supervisors Defendants Schultz, Paiz, Roseman, Hudson, Hubbard, Smith, Knox, Potter, Gagne, Neal, and John Does I-V, including but not limited to the conspiracy(ies) to deprive Plaintiff Welch of constitutional rights, and the retaliatory acts of its employees and supervisors aimed at constructively terminating Plaintiff Welch's employment with APD.

101.    As a result of the acts and omissions of Defendant City of Albuquerque, Plaintiff Welch suffered damages including but not limited to lost pay, loss of opportunity for advancement or job placement, past and future medical and counseling expenses, professional reputation, emotional distress, humiliation,

Complaint for Civil Rights Violations, Civil Conspiracy to Commit Civil Rights Violations, and
Violations of the New Mexico Human Rights Act
Page 35 of 39

degradation, indignation, fear, intimidation, frustration, helplessness, anguish, embarrassment, and loss of enjoyment of life.

102.    The actions of Defendants Schultz, Paiz, Roseman, Hudson, Hubbard, Smith, Knox, Potter, Gagne, Neal and John Does I-V as alleged in Paragraphs 19-77 were intentional, willful, wanton, obdurate, and conducted with malice and reckless indifference, and as such Plaintiff is entitled to an award of punitive damages against these Defendants.

103.    Pursuant to the NMHRA, NMSA 1978, § 28-1-11, Plaintiff Welch is entitled to her reasonable attorney's fees associated with enforcing her rights in this proceeding.

**WHEREFORE**, Plaintiff Welch requests compensatory damages against Defendant City of Albuquerque and Defendants Schultz, Paiz, Roseman, Hudson, Hubbard, Smith, Potter, Knox, Neal and John Does I-V.  Plaintiff Welch further requests and punitive damages against Defendants Schultz, Paiz, Roseman, Hudson, Hubbard, Smith, Knox, Potter, Gagne, Neal and John Does I-V in amounts to be determined at trial.  Plaintiff Welch further requests all of her reasonable attorney's fees, costs and expert witness fees as provided by law, and any other relief the Court deems just and proper.

## COUNT IV: CIVIL RIGHTS VIOLATION PURSUANT TO NEW MEXICO HUMAN RIGHTS ACT, NMSA 1978 § 28-1-1, et. seq.—DEFENDANTS

## SCHULTZ, PAIZ, ROSEMAN, HUDSON, HUBBARD, SMITH, KNOX, POTTER, GAGNE, NEAL and JOHN DOES I-V

104.    Plaintiff incorporates Paragraphs 1-103 as if fully set forth herein.

105.    Defendant City of Albuquerque is an employer as defined by the NMHRA, NMSA 1978, § 28-1-2(B).

106.    Plaintiff Welch is a "person" as defined by the NMHRA, NMSA 1978, § 28-1-2(A).

107.    Defendants Schultz, Paiz, Roseman, Hudson, Hubbard, Smith, Knox, Potter, Gagne, Neal, and John Does I-V are "persons" as defined by the NMHRA, NMSA 1978, § 28-1-2(A).

108.    Defendants Schultz, Paiz, Roseman, Hudson, Hubbard, Smith, Knox, Potter, Gagne, Neal, and John Does I-V committed one or more unlawful discriminatory practices against Plaintiff Welch in violation of the provisions of the NMHRA, NMSA 1978, § 28-1-7(A)-(I), including but not limited to discriminating against Plaintiff in matters of terms, conditions or privileges of employment because of sex (gender/female), and engaging in threats, reprisal or discrimination against Plaintiff for filing a complaint with the EEOC.

109.    Defendant City of Albuquerque, expressly or impliedly, condoned, fostered, encouraged, or otherwise promoted the discriminatory employment practices as more fully enumerated in Paragraphs 19-77 above, through the acts of

its employees and supervisors Defendants Schultz, Paiz, Roseman, Hudson, Hubbard, Smith, Knox, Potter, Gagne, Neal, and John Does I-V, including but not limited to the conspiracy(ies) to deprive Plaintiff Welch of constitutional rights, and the retaliatory acts of its employees and supervisors aimed at constructively terminating Plaintiff Welch's employment with APD.

110.   Pursuant to the NMHRA, Defendant City of Albuquerque is responsible for the acts and omissions of its employees and supervisors.

111.   As a result of the acts and omissions of Defendant City of Albuquerque, Plaintiff Welch suffered damages including but not limited to lost pay, loss of opportunity for advancement or job placement, professional reputation, past and future medical and counseling expenses, emotional distress, humiliation, degradation, indignation, fear, intimidation, frustration, helplessness, anguish, embarrassment, and loss of enjoyment of life.

112.   The actions of Defendants Schultz, Paiz, Roseman, Hudson, Hubbard, Smith, Knox, Potter, Gagne and Neal as alleged in Paragraphs 19-77 were intentional, willful, wanton, obdurate, and conducted with malice and reckless indifference, and as such Plaintiff is entitled to an award of punitive damages against these Defendants.

113.    Pursuant to the NMHRA, NMSA 1978, § 28-1-11, Plaintiff Welch is entitled to her reasonable attorney's fees associated with enforcing her rights in this proceeding.

**WHEREFORE**, Plaintiff Welch requests compensatory and punitive damages against Defendants Schultz, Paiz, Roseman, Hudson, Hubbard, Smith, Knox, Potter, Gagne, Neal, and John Does I-V in amounts to be determined at trial. Plaintiff Welch further requests all of her reasonable attorney's fees, costs and expert witness fees as provided by law, and any other relief the Court deems just and proper.

Respectfully submitted,

**AGUILAR & AGUILAR, P.C.**
2501 Rio Grande Blvd. NW, Ste. A.
Albuquerque, NM 87104
Phone: (505) 243-6810
Fax: (505) 242-6655

By: _____
        Esteban A. Aguilar, Sr., Esq.
        Esteban A. Aguilar, Jr., Esq.

Complaint for Civil Rights Violations, Civil Conspiracy to Commit Civil Rights Violations, and
Violations of the New Mexico Human Rights Act
Page 39 of 39