IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

TERYSA M. WELCH,

      **Plaintiff**,

vs.                          No.: 1:11-cv-00700 KG-RHS

CITY OF ALBUQUERQUE, et. al.,

      Defendants.

---

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT BASED ON QUALIFIED IMMUNITY AND ON PLAINTIFF'S
INABILITY TO SUPPORT CLAIMS**

---

**COMES NOW** Plaintiff Terysa M. Welch ( "Plaintiff" or "Ms. Welch"), by and through

her counsel of record **Aguilar & Aguilar, P.C.** (Esteban A. Aguilar, Jr., Esq.) and **Robert R.**

**Cooper Law Firm, P.C.** (Ryan J. Villa, Esq.), and responds to Defendants Raymond Schultz,

William Roseman, Cecil Knox, David Hubbard, Robert Smith, J.R. Potter, and Kevin Gagne's

Motion and Memorandum in Support of Their Motion for Summary Judgment Based on Qualified

Immunity and on Plaintiff's Inability to Support Claims in Count II ("Motion")(Doc. Nos. 112 and

113), as follows:

**Introduction and Response to Statement of Undisputed Material Facts**

Although they style their motion as one for summary judgment, Defendants rely almost

entirely upon selected allegations of Plaintiff's Second Amended Complaint ("Complaint") as

the factual basis for their assertion of qualified immunity. Although they submitted an affidavit

of Defendant Elizabeth Paiz, it addresses only procedural due process matters and fails to present

a complete picture. Additionally, Plaintiff specifically disputes the claims Defendant Paiz makes

in Paragraphs 4, 5, 8, 9, 10, and 11. Plaintiff, of course, accepts the facts set forth in Paragraphs

1-45 of Defendants' Motion as true. However, the entire course of events as alleged in the

Complaint (Doc. No. 88), the factual background of which comprises approximately twenty-seven (27) pages, must be viewed as a whole, rather than in a piecemeal fashion as presented by Defendants in their Motion and Paiz's affidavit. As Defendants are challenging none of the other facts alleged by Plaintiff, they too must be taken as true for purposes of their Motion and this Response. And, Ms. Welch's Affidavit, being filed concurrently with this Response (Doc. No. 135), provides a concise and complete account of the events leading to the filing of her Complaint, and fully and completely addresses the claims of Defendant Paiz. Ms. Welch incorporates the facts presented in her Affidavit as though fully set forth herein.

Ms. Welch's affidavit is supported by currently available documentation, which establishes the absence of any basis for Defendants' claim of qualified immunity. However, if the Court has any doubts as to the sufficiency of the factual basis for her claims and whether summary judgment based on Defendants' qualified immunity claims is appropriate at this stage of litigation, the Court should permit Ms. Welch to complete discovery that Defendants have obstructed or otherwise avoided over the last two years.

**Defendants have failed to establish a prima facie case entitling them to summary judgment on the Section 1985 conspiracy claims**

Defendants' primary argument respecting the 42 U.S.C. § 1985 civil conspiracy count of the Complaint is based upon the intra-corporate doctrine. *See* Defendants' Memorandum at 17-18. They neglect to mention that, nearly nineteen years ago, the Tenth Circuit rejected application of the intra-corporate doctrine in civil rights cases. *See Brever v. Rockwell Int'l. Corp.*, 40 F.3d 1119, 1126-27 (10th Cir. 1994) (reversing district court's dismissal of 42 U.S.C. § 1985 claims).[1]

---

[1] While holding that the intra-corporate doctrine had no place in civil rights litigation, the Tenth Circuit also explained that even those circuits that extend the doctrine to civil rights cases would

42 U.S.C. § 1985(3) applies to conspiracies motivated by class based, invidiously discriminatory animus. *Id*. at * 78; *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993). That conspiracies based on sex-based animus are within the scope of Section 1985 was settled twenty-seven years ago by *Roybal v. City of Albuquerque*, 653 F.Supp. 102, 104-07 (D.N.M. 1986). In *Roybal* a female officer in the Albuquerque police department (APD) alleged sexual harassment, discrimination and retaliation, and was found to have stated a claim cognizable under 42 U.S.C. §§ 1983 and 1985. *Id*. It is difficult to conceive of any clearer notice that could have been given to these APD Defendants that their misconduct violated the law.

Defendants' claim that Ms. Welch's factual allegations are insufficient to support a claim of conspiracy is puzzling given that they chose to file a motion for summary judgment, but more importantly, both *Brever* and *Hunt v. Central Consol. School Dist*., ___F.Supp.2d ___, 2013 WL 3214928, **73-75 (D.N.M. June 2013), establish that they err in addressing only cherry-picked facts as if they were isolated events, instead of addressing the course of events as a whole. *See Brever*, 40 F.3d at 1123-28 (court determines if the sequence of events alleged is sufficient to allow a jury to "infer from the circumstances that the [conspirators] had a 'meeting of the minds'") (quoting *Adickes v. S.H. Kress and Co*., 398 U.S. 144, 157 (1970)). As the court explained in *Brever*, the nature of conspiracies often makes it impossible to provide details at the pleading stage. 40 F.3d at 1126 (noting that this also means plaintiffs should be allowed to undertake discovery before a court rules on the adequacy of the allegations).

In *Brever* the plaintiffs, former employees at Rocky Flats, alleged a series of events, including threats of harm and retaliation, publication of false charges, intentional bypassing of

---

not apply it under circumstances where the defendants had independent personal stakes in the illegal objective because of their potential exposure to criminal liability or fear of losing their jobs, and so were not "blindly executing corporate policy."

safety procedures, intentional delay in responding to incidents where plaintiffs needed assistance, sexually explicit and insulting remarks and sexually harassing bodily contact by various defendants. This sequence of events followed the company's becoming aware of an FBI criminal investigation and preceded Plaintiffs being called to testify. Plaintiffs alleged that, following their testimony they were retaliated against through, *inter alia*, threats, comments "containing vulgar and obscene language," refusal of requests for transfer, being followed home, harassing phone calls and vandalization of a vehicle.

The court found these allegations supported plaintiffs' claims of conspiracy to prevent their testimony and conspiracy to retaliate following their testimony. *Brever*, 40 F.3d at 1123-24, 126-28; *see also Hunt*, 2013 WL 3214928, **73-79 (D.N.M. June 2013) (factual allegations that some defendants were involved with hate speech blogging, while defendants with supervisory authority failed to denounce the discriminatory blogs, investigate the complaints of discrimination or take action to cure it, were sufficient both to allege an informal policy of discrimination and to allege conspiracy).

The allegations of a series of threatening, harassing, discriminatory and retaliatory actions in *Hunt* and *Brever* are substantially similar to those in the case at bar. And genuine issues of material fact have also been found to preclude summary judgment where, as here, there was evidence the defendants made comments from which an improper motive for a denial of promotion could be inferred, *Gunter v. Morrison*, 497 F.3d 868, 873 (8th Cir 2007) (city officials conspiring to retaliate against plaintiff for suing the city), and where allegations were of unusually serious instances of misconduct. *Kivanc v. Ramsey*, 407 F.Supp.2d 270, 27476 (D.D.C. 2006) (covering up assault and battery). Ms. Welch's Complaint includes allegations of intimidation, sexual and physical harassment, hostile and dangerous work environment,

retaliation, conspiracy to suspend or fire Ms. Welch, and conspiracy to harm her career, reputation, and standing in the law enforcement community by preventing her from promoting within APD. *See* Second Amended Complaint (Doc. No. 88)**,** ¶¶ 20-89. Ms. Welch's affidavit and supporting documentation establishes the existence of admissible evidence supporting these allegations. *See* Welch Affidavit, ¶¶ 3-30, 34-50, 52.

As the Tenth Circuit has long recognized, direct evidence of a conspiracy is rarely available. Instead the existence of a conspiracy is generally inferred from the circumstances. *See e.g. Fisher v. Shamburg*, 624 F.2d 156, 162 (10th Cir. 1980); *Brever,* 40 F.3d at 1125-28. The circumstances set forth in the Complaint and in Ms. Welch's Affidavit readily give rise to the inference of conspiracy. For example, the admission of Mr. Garcia, a fellow detective, that rules were being put in place and would be enforced until Ms. Welch gave in to the harassment and left the ROP unit, and the surveillance of Ms. Welch designed to find grounds to intimidate her and impeach the credibility of her complaints about the hostile working environment and harassment *See* Welch  Affidavit, ¶¶ 21, 40-43.

Defendants are in no position to complain about any vagueness in the few allegations for which definitive proof their participation or acquiescence in the conspiracy has not already been provided. For example, the questions of which of them were directly or indirectly involved in conspiring to have her surveilled during and after work hours in an effort to try and discipline her out of ROP or get her fired from APD altogether; forcing her through the internal affairs process for alleged procedural violations and formally disciplining her, while other male officers who had actually committed the same violations were not; sending Ms. Welch's name in the list of 115 officers convicted of a crime or disciplined for conduct indicating a "lack of good moral character or dishonesty" to the New Mexico Law Enforcement Academy ("NMLEA"), which

became public after the story was published on the front page of the Albuquerque Journal; and which of them participated directly or indirectly in the conspiracy to deny Ms. Welch a fair appellate hearing after her suspension, are questions to which they know the answers. But because they have obstructed discovery addressed to those issues (and other issues raised in the remaining counts of Plaintiff's Second Amended Complaint), Plaintiff cannot at this juncture provide additional clarity. *See* Welch Affidavit, ¶ 51. Instead Defendants' failure to respond to discovery forced her to file a motion to compel. *See* Motion to Compel Answers and Responses to Discovery ("Motion to Compel")(Doc. No. 110). For Defendants to use the absence of more precisely alleged facts, when Defendants have the information but have been apparently been withholding it as a basis for asking this Court for summary judgment, is a kind of gamesmanship that is entirely out of place in a legitimate summary judgment motion.

Of equal importance, the fact that not every one of the moving Defendants may have directly participated in the series of acts designed to drive Ms. Welch out of her position or off of the force, or to retaliate against her for filing a formal complaint against her co-workers and supervisors, is irrelevant. Indirect participation, failure to act by a person with power to do so and acquiescence in illegal activity, are all sufficient to engender liability for conspiracy. *Hunt,* 2013 WL 3214928, **73-79 (D.N.M. June 2013) (allegations that some defendants with supervisory authority failed to denounce discriminatory blogs, investigate complaints of discrimination or take action to cure it, were sufficient both to allege an informal policy of discrimination and to allege conspiracy); *Dickerson v. U.S. Steel Corp.*, 439 F.Supp. 55, 67 (E.D.P.A. 1977) (party who has the power to stop illegal activity but fails to act, or otherwise acquiesces in illegal behavior, has implicitly entered into a conspiracy).

Defendants have actually advanced no qualified immunity arguments with respect to the conspiracy claim. *See* Defendants' Memorandum at 17-18. To the extent Defendants may have been intending to assert a qualified immunity defense to the conspiracy claim, it fails for the same reasons it fails with respect to the other claims encompassed by Count II—the right to equal protection of the laws and the prohibitions on discrimination and retaliation based upon sex and upon the assertion of other recognized and protected rights, were clearly established at the time of the conduct at issue, and the evidence establishes, at the very least a genuine issue about Defendants' violations of Plaintiff's constitutional and legal rights. *See Roybal v. City of Albuquerque*, 653 F.Supp. at 104-07; *Wright v. Rolette City*, 417 F.3d 879, 886 (8th Cir. 2005) (right to be free from gender discrimination is clearly established); *Tuggle v.Mangan*, 348 F.3d 714, 720 (8th Cir. 2003) (sexual harassment by state actors violates the 14th Amendment and establishes a Section 1983 action); *see also Hunt*, 2013 WL 3214928, *82 (rejecting qualified immunity motion).

In *Hunt* the court noted that where the right to be free from discrimination in the workplace underlies the claim, "the particular adverse employment action does not appear to be important to the analysis…" *Id.* It then went on to point out that, nevertheless, the Tenth Circuit has found a reassignment with monetary loss, even in the absence of demotion, qualified as an adverse employment action. *Id*. (citing *Jones v. Oklahoma City Public Sch.*, 617 F.3d 1273, 1279-80 (10th Cir. 2010).

In the instant case Ms. Welch can establish actions from which a conspiracy based on her gender is reasonably inferred, damages resulting from the actions taken by the conspirators, and the law is well-settled that discrimination based upon gender is prohibited. *See Roybal v. City of Albuquerque*, 653 F.Supp. at 104-07; *Wright v. Rolette City*, 417 F.3d at 886 (right to be free

from gender discrimination is clearly established); *see also Hunt*, 2013 WL 3214928, *82 (rejecting qualified immunity motion). Therefore her conspiracy count is not subject to dismissal or summary judgment. *See* Welch Affidavit at ¶¶ 3-50.

### Defendants have failed to make a prima facie case of entitlement to summary judgment on the substantive due process claim

Substantive due process guarantees that a governmental entity will not deprive a person of rights of life, liberty or property, for an arbitrary reason, regardless of how fair the procedures are that are used in making a decision. *Archuleta v. Colorado Dept. of Insts., Div. of Youth Servs.*, 936 F.2d 483, 490 (10th Cir. 1991). In a substantive due process claim the issue is whether the Plaintiff suffered from governmental action that *either* (1) shocks the conscience of federal judges, *Uhlrig v. Harder*, 64 F.3d 567, 573 (10th Cir. 1995), or infringes on a fundamental right or liberty interest. *United States v. Salerno*, 481 U.S. 739, 746 (1987); *Chavez v. Martinez*, 538 U.S. 760, 787 (2003). There are two strands to the substantive due process doctrine; one protects fundamental liberty interests while the other protects against the exercise of governmental power that shocks the conscience. *Id*. In its substantive mode, the Fourteenth Amendment protects against arbitrary and oppressive government action. *County of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998). Traditionally "conscience shocking" conduct involves "deliberately wrongful government decisions rather than merely negligent government conduct." *Uhlrig*, 64 F.3d at 573-74.

Defendants' conclusory and factually unsupported pronouncement that Ms. Welch has not alleged facts that shock the conscience is wholly inadequate to meet their burden and at odds with the actual allegations of Ms. Welch's Complaint or her testimony [See Welch Affidavit, ¶¶

3-30, 34-50].[2] The continuing course of misconduct detailed in her Complaint, and supported by her Affidavit as well as the Expert Report of Ginger McRae, (Welch Affidavit, Exhibit 26), includes deliberately and repeatedly exposing her to the risk of injury or death by failing to respond to her calls for backup, impugning her integrity and inferring dishonesty by publishing her name in the Journal along with 114 officers who had been convicted of a crime or disciplined for conduct that indicates a "lack of good moral character or dishonesty," which were designed to adversely affect her ability to pursue her chosen calling as a police officer*. See* Welch Affidavit, ¶¶10-12, 46-47. This conduct, by officers who have sworn to uphold the law and whose mission includes protecting persons in danger (not maliciously putting one of their own in harm's way) demonstrates the level of "deliberately wrongful" government misconduct required to establish the substantive due process claim. *Id.*; *Bailey v. Kirk*, 777 F.2d 567, 572-75, 578-81 and fns. 6, 15 (10th Cir. 1985).

The question whether the rights and laws Defendants violated were "clearly established" is a question of law, *See Garcia v. Miera*, 817 F.2d 650, 657 (10th Cir. 1987), but where Defendants deny having engaged in misconduct, the questions whether Defendants' engaged in arbitrary and oppressive conduct or otherwise acted in a manner that is shocking to the conscience of federal judges, present questions of fact not properly resolved on summary judgment. Defendants are charged with knowledge that harassment based upon gender is prohibited and that misusing internal complaint and disciplinary processes to harass and retaliate, and failures to accord an officer its protections were unlawful and prohibited actions. *See Brever*,

---

[2] Defendants' reliance on *Tapia v. Beffort*, 2003 WL 24130246, is puzzling as Tapia's allegations are entirely dissimilar to those at issue herein, and Tapia did not oppose dismissal of his 42 U.S.C. § 1983 procedural due process claim, which was virtually identical to his substantive due process claim.

40 F.3d at 1126-28 and *Roybal,* 653 F.Supp at 104-07. Thus there can be no question but that they violated clearly established law.

And even if there remained any question, for purposes of this motion, about their motivation, they would not be entitled to summary judgment because, where motivation is contested, it presents a question of fact. *United States Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 716 (1983) (court should not have required plaintiff to submit direct evidence of employer's discriminatory intent), cited in *Pitre v. Western Electric Company*, 843 F.2d 1262, 1266 (10th Cir. 1988); *Honore v. Douglas*, 833 F.2d 565, 569 (5th Cir. 1987) (summary judgment is "an inadequate procedure for sorting out nebulous questions of motivation"). The question whether these Defendants' conduct was "deliberately wrongful" is, therefore, not determinable on summary judgment. *Aikens*, 460 U.S. at 716. Ms. Welch's Complaint and affidavit contain factual assertions of malice and factual assertions of calculated harassment and retaliation from which malice can be reasonably inferred. *See* Welch Affidavit, ¶¶10-13, 19-20, 23-29, 38-50. Factual assertions from which malice may be reasonably inferred preclude a defendant's reliance on qualified immunity. *Siegert v. Gilley*, 500 U.S. 226, 236 (1991) (Kennedy, J. concurring).

Even if Defendants could raise the defense of qualified immunity, Defendants' err in assuming that only the few property interests they choose to acknowledge are at issue, when the Complaint and affidavit demonstrate that Ms. Welch's liberty interests in her honor and integrity, and both her property and her liberty interests in her chosen profession, were violated. *Workman v. Jordan*, 32 F.3d 475, 481 (10th Cir. 1994) (a false statement impugning a person's honor or integrity is an actionable violation of that person's liberty interest); *Garcia v. Albuquerque*, 232 F.3d 760, 772 (10th Cir. 2000) (allegations of dishonesty or immorality are stigmatizing); *Bailey v. Kirk*, 777 F.2d 567, 572-75, 578-81 and fns. 6 and 15 (10th Cir. 1985) (former police chief,

who could not be suspended except for cause, had property interest and liberty interests, actionable under 42 U.S.C. § 1983, where he alleged he had been forced to resign as a result of harassing and discriminatory conduct including, *inter alia*, denying him the right to change shifts when his level of seniority accorded him that right, wrongfully accusing him of misconduct, disciplining him for a matter for which other officers were not disciplined, and depriving him of the responsibilities and supervisory powers that went with his position); *see also* Liberty Interest Discussion infra.; Welch Affidavit at ¶¶20, 28, 41-43, 45-47.

**Defendants have failed to make a prima facie case of entitlement to summary judgment on the procedural due process claim**

**Property interests**

Defendants' procedural due process argument is based on the untenable position that Ms. Welch had no protected property rights. However, Defendants fail to address the specific protected property rights conferred on her by, *inter alia*, the Albuquerque Merit System Ordinance § 3-1-23 through 3-1-25 (Welch Affidavit, Exhibit 41), the Albuquerque Police Officer Association collective Bargaining Agreement with the City of Albuquerque ("APOA Contract," (Welch Affidavit, Exhibit 19), APD Standard Operating Procedures Administrative Order, Section 3-56 (Welch Affidavit, Exhibit 42), the New Mexico Peace Officer's Employer-Employee Relations Act, NMSA 1978, §§ 29-14-1-11 (1991), and ratified by APD practice.

"[C]onstitutionally protected property interests are created and defined by statute, ordinance, contract, implied contract and rules and understandings developed by state officials." *Hulen*, 322 F.3d at 1240; *Roth*, 408 U.S. at 577 (property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law."). "If state statutes or regulations place substantive restrictions on a government actors' ability to make personnel decisions, then the employee has a property

interest protected by the due process clause." *Potts v. Davis Cnty.*, 551 F.3d 1188, 1192 (10th Cir. 2009) (quoting *Hennigh v. City of Shawnee*, 115 F.3d 1249, 1253 (10th Cir. 1998)); *Schulz v. City of Longmont*, Co.**,** 465 F.3d 433, 444 (10th 2006) ("State law sources for property interests can include statutes, municipal charters or ordinances, and express or implied contracts."); *c.f. Hulen v. Yates,* 322 F.3d 1229, 1240-44 (10th Cir. 2003) (substantive restrictions on transfers contained in a faculty manual, along with customs and practices of the university, conferred a property interest in tenured professors' departmental assignments, requiring adherence to procedural due process).

The ordinances, contracts, statutes, rules, and actual practices referenced herein create discrete procedural mechanisms by which Defendants were bound to 1) handle Ms. Welch's complaints against her co-workers and supervisors, and 2) implement following the initiation of Ms. Welch's complaints to ensure she would not be retaliated against for exercising her rights through these mechanisms, and 3) implement prior to depriving her of any constitutionally protected property or liberty interest.

### Violation of right to due process by suspension without pay

It is undisputed that, Ms. Welch has been employed with APD since 1997, and was a ROP detective from 2004 until she was wrongfully placed on temporary duty status in December 2009 prior to her permanent coerced reassignment in 2011. *See* McRae Report, p. 4; *see also* Complaint at ¶75; Welch Affidavit at ¶¶ 1, 28-30, 36-37, 39, 44. As a non-probationary employee, Ms. Welch could only be disciplined for cause. *See* Ordinance, § 3-1-23;  APOA Contract § 19 (describing the probationary period during which "an Officer may be dismissed for any reason which is not prohibited by law."); APOA Contract §20 (describing procedures for investigation and discipline); *see also City of Albuquerque v. AFSCME Council 18 ex rel.*

*Puccini*, 2011-NMCA-021, ¶ 12, 149 N.M. 379, 249 P.3d 510 (explaining that non-probationary employees are entitled to "the full plethora of rights and benefits, including that the employee can only be disciplined for 'just cause'."). It is well settled that an employee such as Ms. Welch, who could not be suspended from her employment except for cause, has a property interest in her employment that is implicated when she is suspended without pay, and thus is entitled to due process protections under *Loudermill* and its progeny. *See Bailey*, 777 F.2d at 574-75 (employee who could not be suspended except for cause had property interest in continued employment).

APD procedures themselves require due process prior to suspending an employee without pay. *See, e.g.*, APD SOP Administrative Orders 3-46 ("Due Process Notification to Personnel") (Exhibit 42). The NM Peace Officer's Relations Act, the APOA Contract, and City Ordinance also place substantive limits on Defendants ability to investigate and discipline employees, thus reflecting Ms. Welch's property interest in her continued employment was implicated when Defendants suspended her without pay. For instance, the APOA Contract provides that when an officer is being investigated "[t]he officer shall be informed of the nature of the investigation before any interrogation commences" and "[t]his information will be proved to the target officer(s) in writing via certified US Mail." § 20.1.14. *See generally* APOA Contract §20. Exhibit 19. The Peace Officer statute, Section 29-14-4, similarly provides procedures regarding investigations that may result in administrative actions.  Per Ordinance 3-1-23(C) prior to imposing discipline, "the employee shall be notified of the reasons for the discipline contemplated, a summary of the evidence against the employee, and the employee's right to respond to the proposed action." Exhibit 41.

"'While it is true that procedural protections alone do not create a property interest,' when the governmental entity publishes rules…that 'go beyond mere procedural protections…by

13

requiring either mutual consent or due process' they place a substantive limitation on the discretion of the entity to terminate or discipline or adversely change the employment conditions." *Osuagwu v. Gila Reg'l Med. Ctr.,* 938 F.Supp.2d 1142, 1147 (D.N.M. 2012) (quoting *Hulen v. Yates*, 332 F.3d 1229, 1241 (10th Cir. 2003)). This is particularly true involving situations where an employer, municipality, or other government entity promulgates specific, detailed guidelines for protecting employees who make specific complaints of sexual harassment, gender discrimination, hostile work environment, and retaliation against his or her co-workers or supervisors.

Ms. McRae's report outlines some of the profound defects with the process Defendants used to suspend Ms. Welch. *See* McRae Report, pp. 7-15. Among Defendants' numerous procedural failures, McRae addresses the absence of any investigation into the retaliatory motive for the complaint against Ms. Welch and establishes that the investigation that was done was not neutral; that the investigation was based on an inaccurate report; and that there was no indication that the discipline was reviewed "to insure it was consistent with the facts gathered." *Id.* In such circumstances, the ostensible opportunity to be heard is anything but meaningful.

### Failure to Provide an Unbiased Decision Maker

The process that must be afforded when someone is deprived of their property interest is "notice and opportunity for [a] hearing appropriate to the nature of the case." *Loudermill*, 470 U.S. at 542; *Mathews v. Eldridge*, 424 U.S. 319, 334-35, 96 S.Ct. 893 (1976) (setting out the factors by which courts assess what process was required). However, regardless of what process is provided, "an impartial tribunal is an essential element of a due process hearing." *Bailey*, 777 F.2d at 576. If the decision maker is biased, the decision made will be unconstitutional. While a person claiming bias "must overcome a presumption of honesty and integrity in those serving as

adjudicators, "[t]he law is clearly established that a person who is biased in fact may not sit on a quasi-judicial tribunal." *Hicks v. City of Watonga*, 942 F.2d 737, 743, 751 (10th Cir. 1991). Due process is violated when the risk of unfairness is intolerably high under the circumstances. *Mangels v. Pena*, 789 F.2 836 (1986); *see also Hicks v. City of Watonga*, 942 F.2d 737 (10th Cir. 1991). Putting aside for a moment the ineffective notice afforded Ms. Welch, and the ways in which APD prevented her from assessing the evidence against her, thereby impairing her ability to mount a meaningful defense, the risk of unfairness herein was intolerably high because Internal Affairs Lieutenant Doug West was assigned to investigate Ms. Welch's complaints despite his utter lack of training or experience regarding the investigation of equal employment complaints, and Defendant Schultz sat as the decision maker. *See* McRae Report, pp. 5, 7-8.

The circumstances of this case easily give rise to a reasonable inference of bias. The undisputed facts before the Court are that Defendant Schultz—presumably the person "from the top" referred to by Defendant Cecil Knox, Internal Affairs sergeant—conspired with other Defendants in Count II to take adverse employment action against Ms. Welch. This included but was not limited to placing her under surveillance by Defendant Kevin Gagne—one of the ROP co-workers against whom Ms. Welch filed her complaints—surveillance that was used to manufacture grounds for commencing the internal affairs investigation, where Defendant Knox subjected Ms. Welch to humiliating, insulting, and intimidating interrogations. Defendants' Motion ¶¶16-17, 21; *see also* Welch Affidavit, ¶41.

What is perhaps more problematic, is that the person ordered to review the "evidence" against Ms. Welch and to present findings and recommendations to Defendant Schultz was Mr. West. *See* Welch Affidavit, ¶42. At the time he served as the investigating officer for the alleged Welch incident, Mr. West had been promoted and was the Commander of SID. Mr. West

sustained all of the allegations against Ms. Welch and recommended that she be terminated from her employment at APD, despite that the allegations were false, the purported evidence against her did not exist, and that there was no basis for the charges against her. *See* Welch Affidavit, ¶41; *see also generally* McRae Report. Mr. West can hardly be considered unbiased, as he was the APD supervisor who Ms. Welch filed her initial complaint with in August 2009, yet somehow he sat as the investigator into the manufactured charges against Ms. Welch designed to punish her for filing her complaint.

Defendant Schultz's actions as plead and supported by the current record go well beyond mere exposure to facts prior to adjudication by one who is assuming the role of a "neutral" arbiter. Rather, these actions were taken after Ms. Welch had filed her first EEOC complaint, and after the EEOC had returned a determination of probable cause of discrimination against Defendants (including Defendant Schultz) (*See* Determination of Probable Cause, Welch Affidavit, Exhibit 38). Although Defendant Schultz was not directly criticized in that complaint, his Department was, and the timing of these events are such that a reasonable jury could infer that the retaliatory incidents were ordered by Defendant Schultz following the City's receipt of the determination of probable cause.

That Defendant Schultz was, in effect, a target of Ms. Welch's criticism makes the risk of actual bias unconstitutionally high, particularly when it appears that the factual basis "supporting" the allegations against Ms. Welch were manufactured by Defendant Schultz in connection with the other moving Defendants. *Hicks*, 942 F.2d at 751 ("when a tribunal member has been the target of personal abuse of criticism, the risk of actual bias is unconstitutionally high."). The fact that Ms. Welch was ultimately subjected to discipline based upon falsehoods demonstrates that the risk that requiring an unbiased decision maker is designed to prevent—a

bad and unfair decision—actually came to pass. *See* Report of McRae, "2. Incidents in 2010," pp. 12-13 (Welch Affidavit Exhibit 26). Thus, regardless of what process Defendants' claim they provided, the undisputed facts alleged in Ms. Welch's Second Amended Complaint and Affidavit, at the very least, raise genuine issues of material fact respecting the bias of the tribunal and the sufficiency of the process she was constitutionally entitled to receive.

### Violation of constitutional rights through prolonged temporary assignment, transfer, and loss of benefits

Defendants unconstitutionally deprived Ms. Welch of protected interests when they held her on temporary assignment for fourteen months in retaliation for the filing of an EEOC claim, in violation of the APOA Contract and SOPs. There is a protected property interest in a work assignment where a statutory provision, contract term or other policy constrain an employer's ability to reassign or transfer an employee. *Potts*, 551 F.3d at 1192 (citing *Hulen*, 332 F.3d at 1240);  *Hulen,* 322 F.3d at 1240 (stating that a protected interest may be implicated when an employer transfers an employee "if the employee can point to a specific contractual provision and surrounding circumstances establishing a property interest"). In *Hulen,* a faculty manual placed a "substantive restriction on an administrative transfer of tenured faculty." 322 F.3d at 1241. The manual set out specific procedures regarding alterations in the employment status, which required either mutual consent or due process prior to altering status. *Id.* The court concluded that the provisions of the manual went "beyond mere procedural protections" and conferred a protected interest in the departmental assignment.  *Id.* 1241-43. In *Hennigh*, the Tenth Circuit concluded that a law enforcement collective bargaining agreement that prohibited a change in rank except for cause conferred a property interest in a police officer's rank. 155 F.3d at 1254-55. In *Greene v. Barrett*, 174 F.3d 1136, 1140-41 (10th Cir. 1999) a deputy sheriff also had a property interest in his rank where state law provided rank could only be reduced "for

cause." *Hulen*, *Hennigh*, and *Greene*, establish that a contractual term limiting a public employer's ability to alter an employee's employment status confers a property interest in that specific employment status.

As in *Hennigh*, the APOA Contract and APD's SOPs create a property interest in Ms. Welch's position as an ROP detective. The APOA Contract provides that an officer who has been promoted to "a circularized position" may only be removed from that position "for cause" after completing a one-year trial period. APOA Contract, §17 (Exhibit 19). The position of ROP detective is "a circularized position" which Ms. Welch had held since 2004. Ms. Welch had a legitimate expectation of continued employment in her position. *Hennigh,* 155 F.3d at 1253-54 (stating "[t]he standard for the existence of a property right in employment is whether the plaintiff has a legitimate expectation of continued employment" and this is also used "to determine if there is a property right in a particular employment status."). She was deprived of that property interest without due process when she was involuntarily transferred as the result of Defendants' actions.

Additionally, APD's Standard Operating Procedure Administrative Order 3-56 (Exhibit 42), which pertains to "Temporary Assignment/Activity" states that "[t]he length of a temporary assignment shall not exceed the time limits set forth in the current sworn/civilian collective bargaining agreements." Those time limits are found at APOA § 11.3.1, which states that "*[a] permanent change is* defined as a change of more than 45 days." Exhibit 19. It is undisputed, that Ms. Welch was placed on temporary duty for fourteen (14) months. Taken together, the above provisions limit Defendants' authority to place Ms. Welch on temporary duty for more than the permissible forty-five (45) days, or to remove her from her position as an ROP detective except for cause, thus conferring a property interest in her position. *Lauck v. Campbell Cnty*, 627 F.3d

805, 812 (10th Cir. 2010) ("A government employee may have a property interest in his position, but only if he has a legitimate claim of entitlement to that position.") (internal quotation marks and citation omitted). These provisions were in place at the time Defendants placed Ms. Welch on temporary assignment, and acknowledged by Defendant Paiz in her Affidavit (Doc. No. 115).

Defendant's reliance on *Potts*, 551 F.3d at 1192-93, is misplaced. In *Potts,* the court held that the plaintiff did not have a claim of entitlement to his specific position—and by extension the differential pay that came with that position—because there was no limit on the government's discretion to transfer him. But in *Potts* there was no contractual agreement affording Mr. Potts the protections like those guaranteed by the APOA contract that governs Ms. Welch's employment at APD. Nor did standard operating procedures exist akin to those afforded Ms. Welch by APD's SOPs. Here the APOA and APD's SOPs placed limits on APD's ability to transfer or remove Ms. Welch from her earned circularized position. Accordingly, Ms. Welch also had an entitlement to the benefits that stemmed from her position, such as overtime, as her property interest in her position and the custom and practice of ROP conferred on her a legitimate entitlement to ROP overtime shifts. *See* Welch Affidavit, ¶31-33; *see also Roth,* 408 U.S. at 577.

Defendants contend that they provided Ms. Welch with adequate process prior to extending her temporary assignment because (1) she had the opportunity to speak with her supervisor in her office, and (2) she consented to the continued transfer beyond the forty-five days. *Defendants' Response*, pp. 13, 15. Simply being permitted to talk to her supervisor at the beginning of the first temporary duty assignment does not meet the basic requirements of due process. Importantly, Defendants, including Defendant Paiz, fail to address the fact that following Ms. Welch's second forty-five (45) day temporary assignment, she was ignored by

Defendants Paiz and Schultz, and left in limbo as to her duty assignment until March 14, 2011, approximately three-hundred and twenty-two (322) days after explaining her desire to return to her earned position at ROP. *See* Welch Affidavit, ¶¶36, 39, 44.

Contrary to Defendants' assertions, the claim that Ms. Welch consented to a transfer is unsupported by the facts. Rather, Ms. Welch was forced to remain in her temporary assignment because Defendants refused to address the harassment and retaliation in order to avoid dealing with the situation, and to permit the offending Defendants, "hypocrites" as referred to by Defendant Neal, to "save face and retire." *See* Welch Affidavit, ¶29, 35; *see also* McRae Report, pp. 10-11.

### Ms. Welch's transfer constituted a constructive discharge

"Constructive discharge occurs when a reasonable person in the employee's position would view the working conditions as intolerable.  That is to say, the working conditions, when viewed objectively, must be so difficult that a reasonable person would feel compelled to resign."  *Potts*, 551 F.3d at 1194 (quotation marks and citation omitted).  In order to succeed on a due-process constructive discharge claim a plaintiff must show that she had a property right that was violated, defendant had the *mens rea* necessary for a due process violation—that the employer knew or intended (or perhaps was on notice that such intolerable conditions were being imposed on the employee) and "that the employer did not conduct an appropriate hearing to determine whether its actions would violate the employee's contractual rights." *Lauck*, 627 F.3d at 813. As she advised her supervisors on multiple occasions, the intolerable working conditions in ROP, as illustrated in Ms. Welch's Affidavit, were such that she could not return for fear of her safety. *See* Welch Affidavit, ¶¶8-9, 11-13, 15, 20-29, 35, 38-44. Combined with Defendants participation in perpetuating those conditions, the lack of any meaningful inquiry or action on the

part of her employer into her complaints or her work environment, the lack of any appropriate hearing by non-biased parties into whether forcing Ms. Welch to transfer would violate her constitutional and contractual rights, and importantly, the absence of any threshold finding of cause relating to Ms. Welch in her capacity as a ROP detective, Ms. Welch was constructively discharged from her position at ROP. *See generally Id*; *see also generally* McRae Report (Welch Affidavit, Exhibit 26).

For the above reasons, Defendants' unlawful placement of Ms. Welch on temporary duty, ultimately resulting in her permanent transfer, violated her property right in her rightfully earned position as a ROP detective. Therefore Defendants' Motion should be denied.

## Violation of liberty interests

Additionally, Defendants' motion fails to address the deprivation of Ms. Welch's constitutionally protected liberty interests. While "[t]he Due Process Clause of the Fourteenth Amendment ensures that one cannot be deprived of a property right absent due process of law," *Potts*, 551 F.3d at 1192, it also insures that one cannot be deprived of liberty interests without due process. *Workman v. Jordan*, 32 F.3d 475, 480 (10th Cir. 1994). Adverse employment actions implicate liberty interests where plaintiff's good name and reputation, honor, and integrity are affected. *Id*.

Ms. Welch has a recognized liberty interest in her good name and reputation as it affects her protected property interest in continued employment as a law enforcement officer in the State of New Mexico. *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976); *McGhee v. Draper*, 639 F.2d 639, 643 (10th Cir.1981). Actionable statements include false statements that impugn the good name, reputation, honor, or integrity of the employee, and which could adversely affect employment opportunities. *Roth*, 408 U.S. at 573-74.

## Damage to reputation and career advancement

The suspension, which was implemented through unconstitutional processes, ultimately led to submission of Ms. Welch to the NMLEA for action against her law enforcement credentialing, which led to publication of her name along with 115 officers who had been convicted of crimes or disciplined for conduct indicating a "lack of good moral character or dishonesty." See Affidavit, ¶¶46-47. While her name was not printed on the front page of the Albuquerque Journal article appearing on December 30, 2011, her name was made available to the general public through the NMLEA's website and a link on the Albuquerque Journal webpage, and the written complaint and a warning letter authored by the NMLEA responding to her submission were placed in her NMLEA file and remain available to any of Ms. Welch's future employers. The actions of those responsible for intentionally submitting Ms. Welch's name to the NMLEA, despite knowing that there was no factual basis to do so, has a significant impact on Ms. Welch's reputation in the law enforcement community and amounts to an unconstitutional deprivation of Ms. Welch's professional reputation, a protected liberty interest.

The Honorable Judge Martha Vazquez summarized the general rules regarding the deprivation of a liberty interest in professional reputation:

> To show a deprivation of one's liberty interest in professional reputation, a plaintiff must demonstrate (1) statements that impugn the good name, reputation, honor, or integrity of the employee; (2) the statements were false; (3) the statements occurred in the course of terminating the employee or must foreclose other employment opportunities. When a public employer takes action to terminate an employee based upon a public statement of unfounded charges of dishonesty or immorality that might seriously damage the employee's standing or

associations in the community and foreclose the employee's freedom to take advantage of future employment opportunities, a claim for relief is created. A plaintiff must show that his dismissal [or adverse employment action] resulted in the publication of information which was false and stigmatizing – information which had the general effect of curtailing her future choice or action. The public statements must rise to such a serious level as to place the employee's good name, reputation, or honor at stake.

*Osuagwu*, 938 F.Supp.2d at 1147 (internal quotation marks, alterations, and citations omitted). Submitting Ms. Welch's name to the NMLEA for discipline, causing the placement of the cautionary letter in her file, and making this information publicly available in the Albuquerque Journal certainly meets these standards, particularly when the inference drawn from that publication is that Ms. Welch was convicted of a crime or disciplined for conduct that indicates a lack of good moral character or dishonesty. *See* Welch Affidavit, ¶46.

Ms. Welch was pretextually tried and convicted for allegedly transporting beer in her department issued vehicle, when no evidence supported the allegations. *See* McRae Report, pp. 12-13. Importantly, as Ms. McRae noted, Defendant Knox lied to Ms. Welch, misrepresenting that the City had direct evidence of her transporting alcohol in her department issued vehicle. *See Id*. Ultimately, Ms. Welch was "convicted" of the alleged violation, as well as dishonesty for refusing to admit guilt for an incident which the City had no evidence whatsoever. *See Id*.; *see also* Affidavit Paragraph 41-42. These actions, including the subsequent discipline, not only impugned Ms. Welch's good name as a trustworthy, rule-abiding law enforcement officer, but now affect any future employment opportunities she might seek outside of APD because those false allegations are now part of the public domain and her permanent record with the NMLEA.

*See Osuagwu*, 938 F.Supp.2d 1142 (doctor's summary suspension deprived him of property rights and liberty interest in his reputation and ability to find future employment when suspension was reported to medical board and national data base where defendants failed to provide adequate process as required by by-laws).

**Defendant's Motion should be denied because it is premature as discovery is not complete; or in the alternative the Court should defer considering the Motion until discovery is complete pursuant to Fed. R. Civ. Pro. Rule 56(d)(1)**

Rule 56(d)(1) states: "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it." *See also Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986) (stating summary judgment should only be entered after an "adequate time for discovery"). This Court should opt for the latter remedy. Defendants' Motion premature because discovery is incomplete.

If the Court does not deny this Motion outright, it should defer ruling on summary judgment. In the Tenth Circuit, "a party seeking to defer a ruling on summary judgment under Fed. R. Civ. P. Rule 56(d) must provide an affidavit 'explain[ing] why facts precluding summary judgment cannot be presented.'" *Valley Forge Ins. Co. v. Health Care Mgtmt. Partners, Ltd.*, 616 F.3d 1086, 1096 (10th Cir. 2010) (quoting *Comm. for the First Amendment v. Campbell*, 962 F.2d 1517, 1522 (10th Cir.1992)). This requires "identifying (1) the probable facts not available, (2) why those facts cannot be presented currently, (3) what steps have been taken to obtain these facts, and (4) how additional time will enable [the party] to obtain those facts and rebut the motion for summary judgment." *Id.*

While Plaintiff submits that she has adequately demonstrated that qualified immunity is not appropriate and Defendants' Motion should be denied, if the Court believes more evidence

is necessary, it should defer ruling until discovery is complete. *See also Brever*, 40 F.3d at 1126 (citing 5 C. Wright & A. Miller, *Federal Practice & Procedure*, § 1233, at 257 (2d. 1990)("because the nature of conspiracies often makes it impossible to provide details at the pleading stage," a party pleading conspiracy "should be allowed to resort to the discovery process and not be subject to the dismissal of his complaint.")).

By her counsel's affidavit, Plaintiff has identified the facts not available as they relate to Defendant's Motion. *See* **Affidavit of Esteban A. Aguilar, Jr., Esq.**, Attachment 1 hereto. Plaintiff had attempted to start deposing key witnesses previously identified and noticed, but those depositions have been vacated pending resolution of this Motion. *See* Order Staying Case Until Qualified Immunity Resolved, (Doc. No. 133). Additionally, as noted above, Plaintiff's written discovery requests are the subject of a pending motion to compel. *See* Motion to Compel (Doc. No. 110). As the 10th Circuit recognized in *Brever*, Plaintiff should be permitted to undertake discovery on conspiracy claims *before* a court rules on the adequacy of the allegations. It is anticipated that the disputed discovery requests and contemplated depositions will uncover additional facts relevant to all of Plaintiff's claims, including the conspiracy counts. As such, it is appropriate to reopen discovery and permit the anticipated discovery to proceed before the Court rules on Defendants' Motion.

## Conclusion

Defendants make no serious effort to show that the law they violated was not clearly established, instead relying on the intra-corporate doctrine, which has been firmly established as inapplicable in this Circuit, and an untenable claim that no property rights were implicated by their misconduct. Their refusal to address the property and liberty rights affected by their actions establishes the lack of merit of their motion. The basis for application of qualified immunity is

the legal conclusion that law was **not** clearly established and that there are no genuine issues of

fact, such that it can be determined that Defendants did **not** violate any of Plaintiffs liberty or

property rights—conclusions that cannot be reached on the facts pled and attested to, the written

evidence currently available and the law governing this case.

      **WHEREFORE** Plaintiff prays for the entry of an order denying summary judgment.

             Respectfully submitted,

             **AGUILAR & AGUILAR, P.C.**
             2501 Rio Grande Blvd. NW, Ste. A.
             Albuquerque, NM  87104
             Phone:  (505) 243-6810
             Fax:  (505) 242-6655

             By: _____**/S/**_____
                  **Esteban A. Aguilar, Sr., Esq**.
                  **Esteban A. Aguilar, Jr., Esq.**

             **ROBERT R. COOPER LAW FIRM, P.C.**
             Counsel for Plaintiff
             1011 Lomas Blvd. NW.
             Albuquerque, NM 87102
             Phone: (505) 842-8494
             Fax: (505) 243-6279

             By: _____**/S/**_____
                **Ryan J. Villa, Esq.**

**I hereby certify that a true and correct copy of the foregoing was served to the following counsel of record via CM/ECF electronic file service on December 4, 2013:**

Patricia G. Williams, Esq.
Theresa E. Gheen, Esq.
**WIGGINS, WILLIAMS & WIGGINS, P.C.**
Attorney for Defendants
1805 Rio Grande Blvd., NW
Albuquerque, NM 87104
Phone: (505) 764-8400

By: _____**/S/**_____
    **Esteban A. Aguilar, Jr., Esq.**