IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF NEW MEXICO

TERYSA M. WELCH,

    Plaintiff,

vs.                                            No. 1:11-cv-00700-KG/RHS

CITY OF ALBUQUERQUE, a New Mexico
Municipality; RAYMOND SCHULTZ, ELIZABETH
PAIZ, WILLIAM ROSEMAN, JOSEPH HUDSON,
DAVID HUBBARD, ROBERT SMITH, CECIL
KNOX, J.R. POTTER, KEVIN GAGNE, SUE NEAL,
and JOHN DOES I-V, Individually and as agents and
employees of the City of Albuquerque,

    Defendants.

## DEFENDANTS RAYMOND SCHULTZ, WILLIAM ROSEMAN, CECIL KNOX, DAVID HUBBARD, ROBERT SMITH, J.R. POTTER, AND KEVIN GAGNE'S REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT [DOC. 112]

    Defendants Raymond Schultz, William Roseman, Cecil Knox, David Hubbard, Robert Smith, J.R. Potter, and Kevin Gagne ("Defendants") hereby reply in support of their Motion for Summary Judgment Based on Qualified Immunity on Plaintiff's Inability to Support Claims in Count II and their Memorandum in support thereof (collectively, "Motion") [Docs. 112 and 113]. Plaintiff has not demonstrated on the facts alleged: (1) that Defendants' actions violated her constitutional rights; and (2) that her rights were clearly established at the time of the alleged events. Plaintiff has not met her heavy two-part burden required to defeat the Motion, and Defendants are entitled to qualified immunity. *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001).

### INTRODUCTION

    Plaintiff attempts to impermissibly incorporate by reference a 13-page, single-spaced affidavit of the Plaintiff as additional "facts" [Doc. 135] into her response ("Response"). [Doc.

1

134]  This incorporation and an additional two-page affidavit by Plaintiff's counsel violates D.N.M. LR-Civ. 7.5, which limits a response to 24 pages or as otherwise agreed to. Plaintiff exceeds the extension granted by Defendants by at least 11 pages. Furthermore, Plaintiff included 201 pages of attachments to Plaintiff's incorporated affidavit, independently violating D.N.M. LR-Civ. 10.5, which limits exhibits to 50 pages unless parties otherwise agree. No page extension of exhibits was agreed to. Defendants' Motion to Strike the non-compliant filing is pending [Doc. 141], in which Defendants reserved the right to reply to Plaintiff's Response.

Plaintiff's Second Amended Complaint ("Complaint") [Doc. 88] and Response do not clearly articulate which claims in Count II arise under 42 U.S.C. §1983 versus 42 U.S.C. §1985(3). In her Complaint, Plaintiff merely provides several pages of allegations, and then generally, claims Defendants conspired to deprive Plaintiff of substantive and procedural due process rights. Compl. ¶¶101-02. Defendants attempted to articulate Plaintiff's potential §1983 claims of conspiracy in their Motion, separating them from the §1985(3) claim in an effort to identify the specific Defendants and underlying events subject to those allegations. In her Response, Plaintiff continues to conflate the §1983 and §1985(3) claims, confusing the issues.

The Response contains two §1983 claims regarding four underlying events: conspiracies to deprive Plaintiff of (1) substantive due process in not responding to a few calls for back up and in including her name on a web-accessible list of disciplined officers (Response, pp. 8-9); and of (2) procedural due process in suspending her for transporting alcohol in a city vehicle; including her name on a web-accessible list of disciplined officers (Response, p. 22); and temporarily and permanently reassigning Plaintiff from the Repeat Offenders Program ("ROP") to the Burglary Unit (Response, pp. 13-14, 17-18). While Plaintiff fails to distinguish her §1985(3) claims in her Response, she appears to allege conspiracies: (1) to suspend or fire Plaintiff due to the alcohol-related suspension, and (2) to harm her career by preventing her from

being promoted because she failed the Sergeant exam by one point; denying her a fair appellate hearing after her suspension; suspending her for transporting alcohol and, again, including her name on a web-accessible list of disciplined officers.  Response, pp. 5-6.

As set forth below, Plaintiff fails to meet her burden of establishing a violation of a constitutional right that was clearly established at the time of the alleged violation, or a conspiracy to deprive her of that right.  Therefore, Defendants are entitled to qualified immunity.  Defendants' Motion should be granted.

## POINTS AND AUTHORITIES

Once a defendant asserts the affirmative defense of qualified immunity, the burden shifts to the plaintiff to meet a strict two-part test. *Nelson v. McMullen*, 207 F.3d 1202, 1206 (10th Cir. 2000).  The plaintiff must establish (1) a violation of a constitutional or federal statutory right by the defendant, and (2) that the right allegedly violated was clearly established at the time of the violation. *Saucier v. Katz*, 533 U.S. 194, 202 (2001)*; see Currier v. Doran*, 242 F.3d 905, 917 (10th Cir. 2001), cert. denied, 534 U.S. 1019 (2001); *Scull v. New Mexico*, 236 F.3d 588, 595 (10th Cir. 2000).  Because at summary judgment the parties are beyond the pleading phase of litigation, a plaintiff's version of the facts must find support in the record. *Thomson v. Salt Lake County*, 584 F.3d 13204, 1312 (10th Cir. 2009).  It is insufficient for the party opposing a properly supported motion for summary judgment to "rest on mere allegations or denials of his pleadings." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986). *See Abercrombie v. City of Catoosa*, 896 F.2d 1228, 1231 (10th Cir. 1990).  "The non-moving party cannot avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation." Fed. R. Civ. P. 56(e); *Argo v. Blue Cross and Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006).

In all of her claims in Count II, Plaintiff alleges "conspiracy" among Defendants.  Tenth

Circuit case law is clear that a conspiracy claim only arises under §1983 if there is an alleged constitutional deprivation. *Dixon v. Lawton*, 898 F.2d 1443, 1449 n. 6 (10th Cir. 1990). "However, a plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants. 'Conclusory allegations of conspiracy are insufficient to state a valid §1983 claim.'" *Tonkovich v. Kansas Board of Regents*, 159 F.3d 504, 533 (10th Cir. 1998), citing *Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994).

Further, if a plaintiff fails to establish that the right allegedly violated was clearly established at the time of defendant's allegedly unlawful conduct, the Court must grant qualified immunity. *See Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1186 (10th Cir. 2001); *Gross v. Pirtle*, 245 F.3d at 1156; *Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir. 1995). Qualified immunity shields state officials from liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Schaefer v. Las Cruces Public School District*, 716 F. Supp. 2.d 1052 (N.M. 2010); *Currier v. Doran*, 242 F.3d at 923; *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992).

In determining whether the right was clearly established, the court assesses the objective legal reasonableness of the action at the time of the alleged violation and asks whether the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Holland ex rel. Overdorff*, 268 F.3d at 1186. If a reasonable person could have believed that the actions were lawful, "defendants are entitled to dismissal before discovery." *Workman v. Jordan*, 958 F.2d 332, 336 (10th Cir. 1992).

Significantly, Plaintiff does not introduce any additional material facts in her Response. Plaintiff also accepts as true the facts set forth in Plaintiff's Motion (Response, pg. 1; Motion, ¶¶1-45), including the assertion that the Plaintiff has since been promoted and currently holds the rank of sergeant in the Albuquerque Police Department ("APD"). Motion, ¶29. Plaintiff merely proffers unsupported assertions and inferences which are immaterial and insufficient to meet her burden when a qualified immunity defense is raised for summary judgment.

**I.      Plaintiff Fails to Prove a Violation of a Clearly Established Substantive Due Process Right.**

Plaintiff fails to establish that Defendants conspired, as a whole or in any subset, to violate a clearly established substantive due process right when she did not receive a response to a few calls for back up and when her name was included on a web link listing 115 disciplined officers. Response, pp. 8-9.

Plaintiff states the substantive due process clause is violated if the governmental action either (1) shocks the conscience of federal judges or (2) infringes on a fundamental liberty right or liberty interest. Plaintiff has proffered no Supreme Court or Tenth Circuit case on point that indicates that any of her allegations would "shock the conscience" of a federal judge. *See* Motion, pp. 10-11. Furthermore, Plaintiff continued to be employed at APD, and her later changes in rank, pay and grade have been upward. Response at 1; Paiz Affidavit, ¶¶6, 7, 12 [Doc. 115]. In addition, substantive due process claims under §1983 are rarely successful. Judging by the exceedingly small numbers of claimants who prevail under this standard, it appears that the judicial conscience is not easily shocked. As the United States Supreme Court stated in *Collins v. City of Harker Heights*, it "has always been reluctant to expand the concept of substantive due process because guideposts for responsible decision-making in this unchartered area are scarce and open-ended." 503 U.S. 115, 125 (1992); see *Albright v. Oliver*,

510 U.S. 266 (1994).

Plaintiff responds by claiming her liberty interest of pursuing her profession as a police officer was violated when her name was included in a web-accessible list of 115 officers disciplined for lack of moral integrity or dishonesty. According to *Workman v. Jordan*, to be actionable, a constitutional claim of a deprivation of a liberty interest must establish all four elements: (1) the statements must impugn an employee's good name, reputation, honor, or integrity; (2) the statements must be false; (3) the statements must occur in the course of terminating the employee or must foreclose other employment opportunities; and (4) the statements must be published. *Workman v. Jordan*, 32 F.3d 475, 481 (10th Cir. 1994). In this case, the Plaintiff has not and cannot establish all four elements.

Plaintiff cannot prove that her name on list of disciplined officers was a false statement. Plaintiff misconstrues the nature of her suspension by claiming it was only for transporting alcohol in a vehicle owned by the City of Albuquerque ("City"), a violation for which she claims there was no supporting evidence. Response, p. 23. According to Plaintiff's own exhibits, she is plainly wrong on both counts. As evidenced by the copies of a receipt and video footage of the alcohol purchase, eye-witness testimony of her transporting it in a City-owned vehicle, and the time sequence of her purchasing the alcohol on her way home from work,[1] the IA investigator found there was indeed evidence that Plaintiff purchased and transported alcohol. Welch

---

[1] The sequence and timing contributed to the finding that Plaintiff most likely had transported the alcohol in her City-owned vehicle: the IA investigator established that she drove her City-owned vehicle to work that day, it on average took Plaintiff 40 minutes to drive home after work, that the Walgreens was close to her home, her shift that day ended at 16:30, and that she entered the Walgreens around 17:00. Welch Affidavit's Exhibit 23, 7:1-3, 7:13-14, 11:12-23; *see* fn 2.

Affidavit's Exhibit 27.[2]  Furthermore, Plaintiff repeatedly asserted that she did not recall purchasing alcohol 18 days prior to the initial interview, despite video evidence of having made eye contact with Defendant Gagne at the time of the offense and being overheard identifying Gagne as having reported her. *Id.*  In the initial interview, Plaintiff could not even recall if she had purchased and transported alcohol in her City vehicle within the past month. Welch Affidavit's Exhibit 22, 11:5-7; *see* fn 2.  In later interviews, Plaintiff repeatedly did not recall anything about the incident even after viewing receipts and video clips of her alcohol purchase. The IA investigator found that Plaintiff demonstrated a lack of cooperation and credibility on her part. Welch Affidavit's Exhibit 27; see fn 2.  The investigator reasonably concluded that for someone in Plaintiff's position, an ROP detective for four years for whom memory is an important aspect of the job and where Plaintiff reported no memory problems, it was unlikely Plaintiff would be unable to recall whether thirty minutes after her shift ended, she purchased alcohol in a Walgreens near her home just 18 days before the initial interview, and when she postulated Defendant Gagne as the person who reported her. *Id.;* Welch Affidavit's Exhibit 24, 8:1-25, 9:1-17; *see* fn 2.

The IA investigator's recommended suspension, therefore, was based on two problems with her employment, both of which are supported by sufficient evidence.  First, the IA investigator found that Plaintiff purchased alcohol and then transported it in a City vehicle. Second, IA investigator found that Plaintiff lied during the investigative process of the alcohol-related incident, thus indeed resulting in discipline for conduct that indicates "lack of good moral character or dishonesty."

Plaintiff also has not and cannot establish that other employment opportunities have been

---

[2] Plaintiff's affidavits and exhibits should not be accepted as part of her Response, but if they are, they do not support Plaintiff's position.

foreclosed. Plaintiff admits she has since been promoted to APD sergeant despite her suspension or her inclusion on the list. Response at 1; Paiz Affidavit, ¶12. Plaintiff's allegation that her name on the list forecloses non-APD employment opportunities lack factual support. In *Workman v. Jordan*, even though the plaintiff's personnel file contained a false statement, his claim that the possibility of law enforcement jobs was foreclosed was "too intangible to constitute a deprivation of liberty interest," and the Tenth Circuit reversed the district court's denial to dismiss the claim based on qualified immunity. *Workman*, 32 F.3d 475, quoting *Phelps v. Wichita Eagle-Beacon*, 886 F.2d 1262, 1269 (10th Cir.1989). In *Workman,* a captain in a sheriff's department was reinstated with a letter of reprimand, termination letter, and a poor evaluation in his personnel file, but was later denied admission to an FBI program after a review of his file. *Id.* Here, Plaintiff cannot establish there was a false statement and it is undisputed that she has since been promoted. Plaintiff has not established any adverse affect whatsoever on her employment opportunities. And even more so than the plaintiff in *Workman* who had shown that he was denied admission to an FBI program after a review of his file, here Plaintiff's claim of foreclosing future opportunities is "pure speculation" and insufficient to overcome her burden. *Id*.

Because Plaintiff has not established a material fact as to the falsehood of the statement or that employment opportunities are foreclosed, she fails to meet the legal standard set in *Workman v. Jordan*, 32 F.3d at 481. Plaintiff also fails to establish any causal link between any Defendant and the publication element as required by the Tenth Circuit in *Workman v. Jordan*, 32 F.3d 475. The only remotely possible link is to Defendant Schultz whose only alleged connection was his board membership of the New Mexico Law Enforcement Academy ("NMLEA"). Compl. ¶87. Plaintiff has not established any material fact that any Defendant violated a clearly established substantive due process right. As a result, Defendants are entitled

8

to qualified immunity on the substantive due process claims.

## II. Plaintiff Fails to Establish a Violation of a Clearly Established Procedural Due Process Right.

Defendants affirm their position that they did not violate Plaintiff's procedural due process rights. Motion, pp. 11-15. Plaintiff argues that Plaintiff had property interests as conferred by Albuquerque Merit System Ordinance, collective bargaining agreement (APOA), Standard Operating Procedures Administrative Order, and the NM Peace Officer's Employer-Employee Relations Act. Response at 11. Defendants do not contest the application of these statutes, ordinances and contracts. However, Plaintiff fails to establish a material issue of fact that any Defendant violated a clearly established procedural due process right regarding any of her claims: (a) her suspension due to a violation of transporting alcohol in a City vehicle (in which she claims decision-maker bias), (b) the inclusion of her name on a web-accessible list of disciplined officers (Response, p. 22), and (c) Plaintiff's temporary and then permanent assignment transfer from the ROP to the Burglary Unit (Response, pp. 13-14, 17-18). Although Plaintiff has a property interest in continued employment with APD, that property interest has not been adversely affected by any action of Defendants.

### A. Plaintiff Fails to Establish that her Suspension Violated a Clearly Established Property Right.

Plaintiff argues she had a property interest in her employment that was implicated when she was suspended without pay, and was thus entitled to *Loudermill* protections. *Cleveland Bd. Of Educ. v. Loudermill*, 470 U.S. 532 (1985). However, the processes utilized to discipline Plaintiff did not violate procedural due process.

First, Plaintiff claims she lacked a meaningful opportunity to be heard because there was no unbiased decision maker in the alcohol-related investigation. Response, pp. 14-16. Plaintiff claims of bias can be inferred in the investigation because, as she claims, Defendant Schultz was

9

the decision maker who allegedly conspired with other Defendants to take adverse employment action against her, including placing her under surveillance by Defendant Gagne to manufacture grounds for commencing an IA investigation. *Id.*  Plaintiff's allegations are baseless and insufficient to withstand a qualified immunity defense.  The only so-called "evidence" Plaintiff proffers for this allegation is the unsupported conclusion that Defendant Schultz was necessarily biased after Plaintiff filed an EEOC complaint – inferring bias simply because Schultz was APD Chief.  This insinuation of bias defies logic and is insufficient to establish a dispute of material fact of a violation of a clearly established right.  Plaintiff's argument implies that if any employee makes any complaint against APD, that any APD supervisor cannot have even a supervisory-related part in any later unrelated investigation or disciplinary proceeding about that employee.  Defendant Schultz was not implicated in the EEO complaint to which Plaintiff refers, much less was he the "target of personal abuse of criticism" as Plaintiff baldly alleges. Response, p. 16.  The insinuation that Defendant Schultz conspired against Plaintiff as a result of this EEOC complaint is a new theory not alleged in her Complaint and should not be considered by the Court.  As Plaintiff admits, Defendant Schultz reduced Plaintiff's proposed discipline after conducting a review and giving Plaintiff an opportunity to be heard.  Lastly, as discussed *infra,* Plaintiff's claim that she was caught violating APD policy because she was surveilled by Defendant Gagne is also illogical. Like the Plaintiff, Defendant Gagne also lived near the Walgreens, and video evidence establishes that he entered the store several minutes before Plaintiff.  Plaintiff has not established any violation of a clearly established right in connection with her suspension as it relates to Defendant Schultz or any other Defendant. Qualified immunity should be granted to them on this claim.

Plaintiff makes similar unsupported allegations of bias against IA Lieutenant Doug West. Plaintiff states in her affidavit that Lieutenant West was in charge of reviewing Defendant

Knox's investigation and findings relating to Plaintiff's transportation of alcohol and her impeding the investigation. Response, pp. 15-16; Welch Affidavit, ¶42; *see* fn 2. Plaintiff claims West was biased because Plaintiff initially gave West her EEOC complaint. To infer bias from this event is illogical. West is not even named as a Defendant in Plaintiff's Complaint.

Plaintiff also fails to support allegations that Defendant Knox subjected her to humiliating, insulting and intimidating interrogations in the IA investigation, or that he was part of a conspiracy to do so. "Mere allegations unsupported by further evidence, however, are insufficient to survive a motion for summary judgment." *Baca v. Sklar*, 398 F.3d 1210, 1216 (10th Cir. 2005). Plaintiff does not even attempt to factually or legally support her assertions and fails to reference even the IA interviews or findings included as exhibits to her affidavit.

Plaintiff fails to establish any genuine issues of material fact regarding whether there was a violation of a clearly established the procedural due process right when she was suspended her after the investigation her transportation of alcohol, and Defendants are entitled to qualified immunity for this claim.

**B.   Plaintiff Fails to Establish that Inclusion on a Published List of Disciplined Officers Violated a Clearly Established Constitutional Right.**

As discussed in the substantive due process discussion *supra*, Plaintiff fails to establish that the inclusion of her name on a list of disciplined officers is a false statement that foreclosed other employment opportunities. In fact, Plaintiff has since been promoted to sergeant within APD. Response, p. 1; Paiz Affidavit, ¶12. Plaintiff also cannot establish that her inclusion on the list violated a property interest. Plaintiff fails to establish any link to a Defendant's wrongdoing, and conspiracy thereof, in connection with this allegation. Defendants are entitled to qualified immunity on this procedural due process claim.

    **C.    Plaintiff Fails to Establish that a Lateral Transfer of Assignment Violated a Clearly Established Constitutional Right.**

Plaintiff claims she had a protected property interest in having contract, statute, or policy terms adhered to.  Plaintiff fails to establish any violation of a clearly established procedural process right when her work assignment was transferred to the Burglary Unit.

First, Elizabeth Paiz, who was responsible for Plaintiff's temporary transfer, is not named in Count II; and Paul Feist, who was responsible for Plaintiff's permanent transfer, is not a named defendant in any of Plaintiff's claims.  None of the Defendants who are seeking qualified immunity in this Motion is implicated in Plaintiff's procedural due process allegations on this action.

Second, Plaintiff fails to establish a loss of a legitimate claim of benefits as a result of the transfer.  Plaintiff admits that the transfer did not change her wages or pay grade, and that she was neither promoted nor demoted as a result thereof. Response, p. 1; Paiz Affidavit, ¶¶6, 7.  Because she cannot, Plaintiff does not even attempt to assert her rank decreased, thereby rendering irrelevant the case citations regarding a property interest in "rank."  Plaintiff instead claims she had a property interest in her ROP "position" and the "custom or practice" for overtime pay opportunities.  Plaintiff lacks any evidence to support the assertion that there was such a "custom or practice."  Critically, Plaintiff does not proffer any evidence that the ROP assignment is a "position" within the meaning of the APOA Contract. Welch Affidavit's Exhibit 19; *see* fn 2.  Plaintiff simply states, without supporting facts, that the ROP assignment fits into the "position" definition of APOA Contract §17.1.8. Response, p. 18.  Simply stating something does not make it so.  In addition, in the same section of the APOA Contract, §§17.1.10 and 17.1.11, it states, "nothing . . . shall prevent Inter-Division transfers within area commands only prior to advertising a position" and that "involuntary reassignments are subject to the review and

approval of the Chief of Police." *Id.*  Plaintiff's reassignment to the Burglary Unit ROP was just that – an assignment, and not a "position" within the meaning of the APOA Contract. Plaintiff's own excerpts of the Standard Operating Procedure ("SOP") Order 3-56 states that the transfer is one of "assignment," not "position." Response, p. 18; Welch Affidavit's Exhibit 42, p. ; *see* fn 2. Because APD management has the prerogative to make work assignments as necessary, Plaintiff had no property interest in her ROP assignment, and any transfer therefrom does not implicate a lost property interest.  Even if the Court finds it ambiguous whether Plaintiff had a property interest in the "position," the ambiguity would give rise to significant doubt that a violation of a "clearly established" constitutional right occurred.

Plaintiff's next assertion that she did not consent to the transfer of assignment from ROP to the Burglary Unit is not a material issue of fact because the transfer itself did not implicate a lost property interest.  Assuming *arguendo* that such a property interest exists, Plaintiff did not object to the transfer, as evidenced by Plaintiff's own affidavit.  Welch Affidavit, ¶35; *see* fn 2.

Defendants are entitled to qualified immunity because Plaintiff cannot establish a causal link with any of the Defendants and her purported violation of property interest. Independently, Defendants are also entitled to qualified immunity because Plaintiff cannot establish that there was even a violation of a clearly established property interest at all.

**III.    Plaintiff Fails to Establish that a § 1983 or §1985(3) Conspiracy Occurred.**

Conspiracy allegations underlie all of Plaintiff's §1983 and §1985(3) claims.  Section §1983 and §1985(3) claims require proof of a violation of a clearly established law. *See Gallegos v. City and County of Denver*, 984 F.2d 358 (10th Cir. 1993).  Sections 1983 and 1985(3) do not confer substantive rights, but are procedural statutes which provide a remedy for a deprivation of an existing right. *Dixon v. City of Lawton*, 898 F.2d at 1448.  Defendants reiterate the standard stated in their Motion that for the law to be clearly established, a Supreme

Court or Tenth Circuit decision must be on point, or the clearly established weight of authority from other courts must be as Plaintiff maintains. *Murrell v. School District No. 1*, 186 F. 3d 1238, 1251 (10th Cir.1999), quoting *Medina v. City & County of Denver*, 960 F. 2d at 1498; *see* Motion, p. 9.

In the Tenth Circuit, "a plaintiff must allege specific facts showing an agreement and concerted action" amongst Defendants. *Tonkovich*, 159 F.3d at 533. In *Tonkovich*, when the plaintiff's employment as law professor was terminated, the plaintiff alleged that defendants had conspired to deprive him of due process and equal protection rights. *Id.* at 509, 533. The court determined that it was unreasonable to infer a conspiracy merely because plaintiff alleged defendants met with each other to conspire to fire plaintiff. *Id.* In *Tonkovich*, some of the defendants had even solicited complaints from students. The court upheld a motion to dismiss on plaintiff's conspiracy claims because plaintiff did not carry his burden of alleging the necessary and specific facts to support his claim. *Id.*

### A.   **Plaintiff Fails to Establish a Conspiracy.**

Regarding the element of "conspiracy" for her §1983 or §1985(3) claims, Plaintiff has not established sufficient facts that such a conspiracy occurred. Plaintiff's conspiracy claims against Defendants mirror those in *Tonkovich*. *Id*. Plaintiff baldly claims that she was treated differently than male officers and was harassed (Response, p. 5). She has not alleged specific facts that show an agreement or concerted action among the defendants to deprive her of her constitutional rights. Plaintiff cannot support any of her underlying constitutional claims against Defendants as previously discussed. For instance, Plaintiff's unsupported claim that Defendant Schultz conspired to include her name on a list of disciplined officers simply because he held an advisory capacity with the NMLEA is similar to the unsupported claim in *Tonkovich* in which the court reversed the denial of the motion to dismissed based on qualified immunity. To the

14

extent that a retaliation motive is alleged, retaliatory-discharge theory does not give rise to a viable claim under §1985(3). *Long v. Laramie County Community College Dist.*, 840 F.2d 743 (10th Cir. 1988). Summary judgment on Count II is warranted.

Plaintiff states that direct evidence of conspiracy is rarely available and is generally inferred from the circumstances (citing *Brever v. Rockwell Int'l Corp.*, 40 F.3d 1119 (10th Cir. 1994) and *Fisher v. Shamburg*, 624 F.2d 156 (10th Cir. 1980)), however Plaintiff does not establish any material facts that a conspiracy occurred. To the extent Plaintiff claims that *Hunt* and *Brever* are analogous, they are unpersuasive because *Hunt* is a June 2013 decision of the District Court of New Mexico (years after the alleged conspiracy took place) and *Brever* did not address §1983 or §1985(3) claims at all. *Hunt*, 17 F.3d 1263; *Brever,* 40 F.3d 1119.

**B.     Plaintiff Fails to Establish An Overt Act in Furtherance of the Alleged Conspiracy or a Violation of Equal Protection.**

Plaintiff fails to establish any overt act in furtherance of the alleged conspiracy, and therefore additionally fails to establish a §1985(3) claim sufficient to overcome a motion of summary judgment based on a qualified immunity. *See, Gallegos v. City & Cnty. of Denver,* 984 F.2d 358, 364 (10th Cir. 1993) (there is no inference of conspiracy to deprive plaintiff of equal protection without evidence of discriminatorily motivated meeting of the minds or agreement among defendants.) Plaintiff claims her right to equal protection was violated by the conspiracy. However, despite her long-winded Response, Plaintiff asserts no facts to support allegations of conspiracy based on discriminatory motive. The only allegations of discriminatorily-motivated comments were allegedly made by Defendant Gagne, who was not Plaintiff's supervisor, other than an occasional temporary acting sergeant assignment, Plaintiff fails to establish that he had promotional powers over Plaintiff. Plaintiff does not name any other Defendants who are alleged to have conspired with each other against her. As in *Kelley,* where plaintiff's equal

protection claim failed for lack of evidence showing that similarly situated individuals were treated differently, here Plaintiff has likewise not proffered sufficient evidence for differential treatment. *Kelley v. City of Albuquerque,* 375 F.Supp.2d 1183, 1217 (D.N.M. 2004) (granting summary judgment based on qualified immunity).

Plaintiff refers to Mr. Garcia's affidavit regarding the stricter adherence to rules is evidence of discriminatory animus. Response, p. 5. These allegations contain nothing but inference and speculation to link any Defendant to wrongdoing or discriminatory animus. Plaintiff's allegations that the alcohol-related investigation was the result of surveillance (Response, p. 5) fail because Defendant Gagne entered the store where Defendant purchased alcohol several minutes before Plaintiff entered the store, as evidenced by the Investigation Report, attached as **Exhibit 1,** hereto. Exhibit 1, last 2 pages.  How can one follow someone who is behind you?  Next, according to Plaintiff's own exhibit, the IA investigator's recommended suspension was based on a finding that Plaintiff failed to cooperate in the investigation. Welch Affidavit's Exhibit 27; *see* fn 2.  It is hard to imagine how this finding could be the result of conspiracy when Plaintiff repeatedly failed to recollect anything about the day in question, which was just 18 days prior to the first interview, when Plaintiff entered a store close to her home thirty around thirty minutes after her shift ended, made eye contact with Defendant Gagne, and purchased alcohol.  More importantly, Plaintiff does not even attempt to establish that the inclusion of her name on a web-accessible list of disciplined officers is a violation of equal protection, as required by §1985(3).  Plaintiff does not even postulate that other officers who were similarly disciplined for impeding an investigation were treated differently, or that similarly-situated officers were likewise discriminated against.  Lastly, the allegation that Plaintiff was denied a fair appellate hearing (Response, p. 6) is a new claim, not a part of Count II, and is not adequately supported by any factual allegations, as discussed *supra*.

Plaintiff cannot establish bias on the part of Defendant Shultz simply because Schultz was an APD supervisor at the time Plaintiff filed an EEOC complaint.

While Plaintiff does not refer to the punctuality memo in her Response, to the extent it is included in her §1985(3) claim, if at all, Plaintiff fails to establish a conspiracy or violation of equal protection.  In her Complaint and affidavit, Plaintiff claims she was treated differently for missing a team meeting.  However, according to her own excerpts of Detective Hill's EEOC Statement, Hill, who also missed the meeting, stated "[I had] called . . . that I was going to assist on this foot chase. And Sergeant Hubbard . . . acknowledged that he knew where I was."  Welch Affidavit's Exhibit 4, 10:13-15; see fn 2.  No such timely notice was given or tacit permission for non-attendance was asked for by Plaintiff.  When Hill returned after the chase, he called Defendant Hubbard who granted permission not to attend the remainder of training. *Id.*, 11:23-15 to 12:1.  Plaintiff cannot establish that she was treated differently for the same actions, so the extent that equal protection is claimed for this event, Plaintiff has not met her burden.

**IV.    Plaintiff Cannot Establish a Constructive Discharge Claim.**

In her Response, Plaintiff impermissibly attempts to amend Count II of her Complaint by introducing a constructive discharge claim.  This, Plaintiff cannot do.  Assuming *arguendo* that Plaintiff could add this claim to Count II, Plaintiff cannot establish that she was compelled to resign or that this is a violation of a constitutional right, as required by §1983 and §1985(3). Plaintiff remains employed at APD, without a break in service, with no decrease in pay, grade or rank, and has since been promoted to the rank of sergeant.  Plaintiff has not proffered facts that employer discharged her at all or knew or intended to violate contractual rights. Plaintiff was not discharged, constructively or expressly, and the claim must be dismissed.

17

## V. Defendants have not Obstructed Discovery and No Further Discovery is Warranted on the Qualified Immunity Issue.

Plaintiff seeks to circumvent the Order to Stay [Doc. 133] by adding an argument not included in briefing: a request to permit discovery on the qualified immunity issue. Plaintiff cites *Brever* for the proposition that the nature of conspiracies makes it impossible to provide details at the *pleading* stage. *Brever*, 40 F.3d at 1126. However, Plaintiff is not at the pleading stage. Despite receiving EEOC, IA, and personnel files during discovery, Plaintiff does not establish a sufficient factual basis of conspiracy. Although depositions of Defendants have been stayed, there is substantial "testimony" in the EEOC and IA documents already produced. It is hard to imagine what additional relevant information could be found during a deposition that would assist in establishing a conspiracy. Contrary to Plaintiff's claim that Defendants have obstructed discovery, after Defendants were represented by new counsel in July, 2012, Defendants worked with Plaintiff in good faith to answer and supplement Plaintiff's interrogatories and requests for production modeled after Defendant Gagne's answers, served in early January, 2013, which Plaintiff's counsel found to be acceptable, as evidenced by **Exhibits 2 and 3**, attached hereto. Nine months after service of Defendant Gagne's answers and responses, on October 2, 2013, Plaintiff's counsel filed a Motion to Compel. [Doc. 110] The Motion to Compel is egregiously untimely pursuant to D.N.M.LR-Civ. 26.6 and 37.1 which require that the party upon whom objections are served must file its motion to compel within 21 days after receipt of the objection or the objection will be deemed as valid, but the 21-day period may be extended or shortened upon discretion of the court. Plaintiff set deposition dates to begin November 19, 2013, but several weeks of depositions were vacated due to the Plaintiff requesting more time to respond to the Qualified Immunity motion. Any delay is a result of Plaintiff's own delay.

## CONCLUSION

As set forth above, Plaintiff fails to meet her burden of establishing a violation of a constitutional right that was clearly established at the time of the alleged violation, or a conspiracy to deprive her of that right. Therefore, Defendants are entitled to qualified immunity and their Motion for Summary Judgment should be granted.

        Respectfully submitted,

        WIGGINS, WILLIAMS & WIGGINS
        A Professional Corporation

        By   */s/ Theresa E. Gheen*
             Theresa E. Gheen
             Patricia G. Williams
        Attorneys for Defendants
        1803 Rio Grande Blvd., N.W. (87104)
        P. O. Box 1308
        Albuquerque, New Mexico 87103-1308
        (505) 764-8400

I HEREBY CERTIFY that on the 26th day of December, 2013,
I filed the foregoing electronically though the CM/ECF system,
which caused all parties or counsel of record to be served by electronic
means, as more fully reflected on the Notice of Electronic Filing.

*/s/ Theresa E. Gheen*
Theresa E. Gheen