IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

TERYSA M. WELCH,

      Plaintiff,

vs.                                      Civ. No. 11-700 KG/SCY

CITY OF ALBUQUERQUE, a New Mexico
Municipality; RAYMOND SCHULTZ,
ELIZABETH PAIZ, WILLIAM
ROSEMAN, JOSEPH HUDSON, DAVID
HUBBARD, ROBERT SMITH, CECIL
KNOX, J.R. POTTER, KEVIN GAGNE,
SUE NEAL, and JANE DOES I-V, individually
and as agents and employees of the City of
Albuquerque,

      Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

      This matter comes before the Court upon "Defendants Raymond Schultz, William

Roseman, David Hubbard, Cedcil [sic] Knox, Robert Smith, J.R. Potter and Kevin Gagne's

Motion for Summary Judgment Based on Qualified Immunity and on Plaintiff's Inability to

Support Claims," and supporting memorandum both filed on October 9, 2013 (collectively,

Motion for Summary Judgment).  (Docs. 112 and 113).  Defendants Schultz, Roseman, Hubbard,

Knox, Smith, Potter, and Gagne (collectively, Conspiracy Defendants) seek (1) summary

judgment on Count II of Plaintiff's Second Amended Complaint (Doc. 88), which alleges

conspiracy claims under 42 U.S.C. §§ 1983 and 1985, and (2) an award of attorney's fees and

costs.  On June 27, 2016, Plaintiff filed her third amended response, in which she opposes the

Motion for Summary Judgment and, in the alternative, moves the Court under Fed. R. Civ. P.

56(d)(1) to defer ruling on the Motion for Summary Judgment until she conducts further

discovery. (Doc. 218). On July 11, 2016, Conspiracy Defendants filed a third amended reply in which they move to strike Plaintiff's Amended Affidavit and unsworn expert reports. (Doc. 220). Having considered the Motion for Summary Judgment and the accompanying briefing, the Court denies Plaintiff's Rule 56(d)(1) request, strikes the unsworn expert reports, grants the Motion for Summary Judgment, and denies Conspiracy Defendants' request for an award of attorney's fees and costs.

A. *Preliminary Issues*

   1. *Plaintiff's Rule 56(d)(1) Request to Defer Ruling on the Motion for Summary Judgment*

In addition to opposing the Motion for Summary Judgment, Plaintiff filed an amended Rule 56(d) affidavit to support her request that the Court defer ruling on the Motion for Summary Judgment until she conducts discovery.[1] *See* (Doc. 218-3). To obtain relief under Rule 56(d), the party seeking additional time to conduct discovery must "present an affidavit that identifies 'the probable facts not available and what steps have been taken to obtain these facts. The nonmovant must also explain how additional time will enable him to rebut the movant's allegations of no genuine issue of material fact.'" *FDIC v. Arciero,* 741 F.3d 1111, 1116 (10th Cir. 2013) (quoting *Trask v. Franco,* 446 F.3d 1036, 1042 (10th Cir. 2006)). "Unless dilatory or lacking in merit," a party's Rule 56(d) request "should be liberally treated." *Jensen v. Redevelopment Agency of Sandy City*, 998 F.2d 1550, 1553–54 (10th Cir. 1993) (internal quotation marks and citations omitted). The decision to grant additional discovery under Rule 56(d) is within the district court's discretion. *Patty Precision v. Brown & Sharpe Mfg. Co.,* 742 F.2d 1260, 1264 (10th Cir. 1984); *see also Pfenninger v. Exempla, Inc.,* 116 F.Supp.2d 1184,

---

[1] Because Conspiracy Defendants raise qualified immunity issues in the Motion for Summary Judgment, the Court stayed discovery pending a ruling on the Motion for Summary Judgment. (Doc. 152).

1194 (D.Colo. 2000) ("The district courts exercise discretion in deciding whether to grant a [Rule 56(d) ] motion.").

Plaintiff's counsel contends in his amended affidavit that conducting depositions will aid in authenticating numerous documents attached to her third amended response and confirm factual statements made in interview transcript excerpts also attached to the third amended response. (Doc. 218-3) at ¶ 10. Moreover, Plaintiff's counsel asserts that allowing written discovery and 22 depositions "will reveal additional material facts directly relevant to Ms. Welch's *Second Amended Complaint*." *Id.* at ¶¶ 9 and 10.

The Court notes that "[a] court may consider unauthenticated documents submitted in support of or opposition to a motion for summary judgment if the opposing party does not challenge authenticity." *Carrasco v. New Mexico Dep't of Workforce Sols.*, 2013 WL 12092509, at *9 (D.N.M.) (citing *Noblett v. Gen. Elec. Credit Corp.*, 400 F.2d 442, 445 (10th Cir. 1968) (citations omitted)). Here, Conspiracy Defendants do not challenge the authenticity of Plaintiff's documents. Consequently, the Court will consider those documents, thereby making additional discovery to authenticate those documents unnecessary.

With respect to the interview transcript excerpts, the Court observes that they do not comply with Fed. R. Civ. P. 30(f) which requires a certification from the court reporter "that the witness was duly sworn and that the deposition accurately records the witness's testimony." Nonetheless, it is well-established in the Tenth Circuit that "[w]hile the party opposing summary judgment need not produce evidence in a form that would be admissible at trial, the content or substance of the evidence must be admissible." *Carrasco*, 2013 WL 12092509, at *8 (quoting *Law Co. v. Mohawk Constr. & Supply Co.*, 577 F.3d 1164, 1170 (10th Cir. 2009)). Although Plaintiff, in this case, refers to the transcript excerpts as "sworn" and Conspiracy Defendants

note that one of the excerpts is "unsworn," Conspiracy Defendants do not otherwise challenge

the authenticity or accuracy of the excerpts.  *See, e.g.,* (Doc. 218) at 2-3 (Plaintiff refers to

"EEOC Sworn Statement of John Sullivan"); (Doc. 220) at 5, ¶ B (Conspiracy Defendants refers

to "unsworn statement of John Sullivan").  Because Conspiracy Defendants do not challenge the

authenticity or accuracy of the transcript excerpts, and because the excerpts only lack the court

reporter's certificate, the Court will consider those excerpts.  Accordingly, additional discovery

to "[c]onfirm the factual statements made in the transcript excerpts" is unnecessary.  *See* (Doc.

218-3) at ¶ 10(b).  *See also Kornberg v. United States*, 2015 WL 3407530, at *3 fn. 17 (D. Nev.)

(where defendant did "not challenge the authenticity or accuracy" of deposition transcript "and

the only thing lacking from the exhibit is the court reporter's certificate," court found "sufficient

indicia of reliability" to consider transcript).

Furthermore, Plaintiff's counsel fails to indicate in his amended affidavit what "probable

facts" are not available to Plaintiff which would specifically rebut Conspiracy Defendants'

contention that there are no genuine issues of material fact with respect to Count II.[2]  Instead,

Plaintiff's counsel generally contends that "discovery will reveal additional material facts"

relevant to the Second Amended Complaint.  Such a general contention, not tailored to Count II,

is merely an improper request to conduct a fishing expedition for information.  *See Ellis v. J.R.'s

Country Stores, Inc.,* 779 F.3d 1184, 1208 (10th Cir. 2015) ("Rule 56(d) *is not a license for a

fishing expedition.*") (brackets and internal quotation marks omitted)).  *See also Ramirez v. Hart*,

2014 WL 2170376, at *4 (W.D. Wash.) (conclusory statements of conspiracy are insufficient to

grant Rule 56(d) motion).  Plaintiff has not convinced the Court that it should defer ruling on the

---

[2] The Court notes that except for a brief affidavit by Defendant Elizabeth Paiz, Conspiracy
Defendants accept many of Plaintiff's allegations in the Second Amended Complaint to support
the Motion for Summary Judgment.

4

Motion for Summary Judgment until Plaintiff conducts further discovery. The Court, therefore, denies Plaintiff's Rule 56(d)(1) request.

### 2. *Plaintiff's Amended Affidavit*

Conspiracy Defendants move to strike Plaintiff's Amended Affidavit (Doc. 218-1) in its entirety, because it continues to (1) consist of 13 single-spaced pages, and (2) violate Fed. R. Civ. 56(c)(4) by not being based on personal knowledge, not setting forth admissible facts, and containing unsupported argument.

On May 13, 2016, the Court ruled on Conspiracy Defendants' second motion to strike Plaintiff's original 13-page single-spaced affidavit, which Plaintiff filed with her second amended response to the Motion for Summary Judgment. (Doc. 209). The Court denied Conspiracy Defendants' request to strike that affidavit and stated that the Court would simply not consider any portion of the affidavit which does not conform with Rule 56(c)(4). *Id.* at 5-7. However, to clarify the affidavit, the Court allowed Plaintiff to file an amended affidavit in compliance with Rule 56(c)(4). *Id.* at 8-9. In response to the Court's order, Plaintiff filed an Amended Affidavit in support of her third amended response.

Although the Amended Affidavit still contains portions not in compliance with Rule 56(c)(4), the Court will simply disregard those portions and entertain the portions of the Amended Affidavit which do comply with Rule 56(c)(4). This approach better serves the interest of justice than striking the Amended Affidavit in its entirety or allowing yet another amended affidavit, amended response, and amended reply. Thus, the Court denies Conspiracy Defendants' request to strike Plaintiff's Amended Affidavit in its entirety.

### 3. Plaintiff's Expert Reports

Conspiracy Defendants also move to strike two unsworn expert reports submitted by Plaintiff in support of her third amended response. (Docs. 218-2 and 218-22). The Tenth Circuit recently acknowledged that "unsworn expert reports are not competent evidence on summary judgment." *Peak ex rel. Peak v. Cent. Tank Coatings, Inc.*, 606 F. App'x 891, 895 (10th Cir. 2015). The Court will, therefore, strike Plaintiff's unsworn expert reports.

### B. Background

### 1. Plaintiff's Second Amended Complaint

This is an employment lawsuit brought by a female Albuquerque Police Department (APD) detective. Plaintiff alleges that while working for APD's Repeat Offender Program (ROP), a program of the Special Investigations Division (SID), she was subjected to a hostile and harassing work environment and was treated disparately because of her gender. Plaintiff sued numerous individuals including the following Conspiracy Defendants: APD Chief of Police Schultz, APD supervisor Roseman,[3] APD ROP supervisor Hubbard, APD Internal Affairs (IA) supervisor Knox (now deceased), APD SID supervisor Smith, APD ROP detective Potter, and APD ROP detective Gagne.

In Count II, the claim at issue in this Motion for Summary Judgment, Plaintiff alleges that Conspiracy Defendants conspired "to punish and retaliate against Plaintiff for filing" an Equal Employment Opportunity Commission (EEOC) complaint. (Doc. 88) at ¶ 102. Plaintiff further alleges that the goal of the conspiracy was to force Plaintiff to leave the ROP team "and/or" to leave APD, and to silence other APD employees who would complain about APD policies and procedures or complain about Conspiracy Defendants. *Id.* To accomplish this goal,

---

[3] Although Plaintiff names Roseman as a Conspiracy Defendant, Plaintiff does not present any evidence that refers to Defendant Roseman.

Plaintiff contends that Conspiracy Defendants denied her substantive and procedural due process in violation of Sections 1983 and 1985 by "depriving her of wages, benefits, and the opportunity for career advancement or promotion, and terminating her employment."  *Id.* at ¶ 101.

>    2.  *Relevant Facts Viewed in the Light Most Favorable to Plaintiff*[4]

After Plaintiff joined ROP in 2004, Defendant Gagne told Sergeant John Sullivan something to the effect that "we got f*****, we had to take her, we had to take a skirt," referring to Plaintiff.  (Doc. 218-4) at 2.  Sergeant Sullivan told Plaintiff that Defendant Gagne never liked her.  *Id.* at 3.

Defendant Smith sexually harassed Plaintiff between 2004 and 2007.  (Doc. 218-1) at ¶ 4. Defendant Potter also sexually harassed Plaintiff while she was at ROP.  *Id.* at ¶ 5.

In July 2009, Defendant Gagne, at that time the acting ROP team sergeant, told Plaintiff and Detective Michael Hill to attend a 9:30 a.m. meeting at the wrong location, the SID office, which resulted in Defendant Hubbard formally reprimanding Plaintiff with a "punctuality memo" for missing the meeting.  *Id.* at ¶¶ 6 and 7.  Although Detective Hill was proceeding to the SID office for the meeting, he was delayed by responding to a call regarding a foot chase. (Doc. 218-7) at 4.  When Detective Hill arrived at the SID office, close to 10:00 a.m., Detective Hill saw only Plaintiff and radioed Defendant Hubbard to see where everyone was.  *Id.* Defendant Hubbard stated that they were at the firing range.  *Id.*  At that point, Detective Hill told Defendant Hubbard he was not going to get to the training, because the training would be nearly over by the time he got there.  *Id.*  Apparently, Detective Hill was not reprimanded for missing the meeting.  (Doc. 218-1) at ¶ 7.

---

[4] This recitation of relevant facts excludes inadmissible hearsay and other inadmissible statements.

After receiving the punctuality memo, Plaintiff met with Defendant Smith about the hostile work environment, and met with Defendant Joseph Hudson, a non-Conspiracy Defendant and SID Commander, about being sexually harassed by Defendants Smith and Potter.  *Id.* at ¶¶ 8 and 9.  Both Defendant Smith and Defendant Hudson did not address Plaintiff's concerns.  *Id.*

Two days after Plaintiff received the punctuality memo, Defendant Hubbard did not give Plaintiff a partner when she participated in a "warrant round-up," but, instead, told Plaintiff to let him know if she needed backup.  *Id.* at ¶ 10.  During this warrant round-up, Plaintiff unsuccessfully asked for backup from ROP and had to obtain assistance from another task force. *Id.* at ¶¶ 11 and 12.

In August 2009, Defendants Potter and Gagne, and another ROP detective, met with Plaintiff in a closed office to question Plaintiff about her complaint of a hostile work environment and sexual harassment.  *Id.* at ¶ 13.  Plaintiff refused to speak to them about her complaint.  *Id.*  Defendants Potter and Gagne became angry with Plaintiff, and Defendant Gagne left the office cursing and slamming the door.  *Id.*

Plaintiff then filed an EEOC complaint in August 2009 against Defendant City of Albuquerque (City) alleging harassment, disparate treatment based on gender, and a hostile work environment.  *Id.* at ¶ 14.  Plaintiff also made a complaint with APD Lieutenant Doug West, a non-Defendant, who worked in APD's IA Unit.  *Id.* at ¶ 15.  Lieutenant West assured Plaintiff that her complaint would remain confidential and that only he and Defendant Schultz would know about it.  *Id.*  However, in late August 2009, an online blog, Eye on Albuquerque, contained a post which referred to Plaintiff's complaint.  *Id.* at ¶ 16.

In October 2009, APD temporarily relocated Defendant Hubbard from ROP, but he returned to ROP in November 2009 as the sergeant in charge.  *Id.* at ¶¶ 18 and 19.  Upon his

return, he told the ROP team that they would operate under new restrictive ROP operational guidelines. *Id.* at ¶ 19. Plaintiff's co-workers were upset with the new guidelines. *Id.*

In November 2009, Plaintiff received a memo from Defendant Hudson containing a false accusation by Defendant Hubbard that Plaintiff did not provide him cover and deviated from a surveillance. *Id.* at ¶ 20; (Doc. 218-12). Plaintiff responded to the allegations in writing. (Doc. 218-1) at ¶ 20. These documents are in Plaintiff's personnel file. *Id.*

On December 2, 2009, Detective Danny Garcia stated at a ROP team briefing, at which Defendant Hubbard did not attend, that the ROP team knew that "they are trying to push" Plaintiff out by instituting the new guidelines. *Id.* at ¶ 21. *See also* (Doc. 218-10) at 2-4. Detective Garcia later clarified during an EEOC interview that Defendant Hudson made statements indicating that the new guidelines would remain in place until Plaintiff left ROP. (Doc. 218-10) at 5-6. According to Detective Garcia, pushing people out like that occurs with both male and female employees. *Id.* at 6.

On December 4, 2009, Plaintiff met with Defendant Paiz, a non-Conspiracy Defendant and APD Deputy Chief of Investigations Bureau, about the harassment, disparate treatment, and hostile work environment at ROP. (Doc. 218-1) at ¶ 22; (Doc. 115) at ¶ 2. Defendant Paiz agreed to address the conduct of Plaintiff's co-workers and supervisors. (Doc. 218-1) at ¶ 22.

On December 9, 2009, Defendant Smith acted in an intimidating manner toward Plaintiff by forcing her to run into the wall of a hallway at SID. *Id.* at ¶ 23.

The next day, Defendant Schultz ordered Plaintiff and another female detective, who had filed an EEOC complaint, to attend a mandatory EEOC training class for SID employees. *Id.* at ¶ 24; (Doc. 218-13) at 2-3. Defendant Sue Neal, a non-Conspiracy Defendant and City Human Resources Director, taught the EEOC training class indicating that SID personnel were required

to attend because of complaints and referring to the training as "punitive training."  (Doc. 218-1) at ¶ 25.  Plaintiff felt "extremely uncomfortable" at the training.  *Id.* at ¶ 27.

On December 11, 2009, Plaintiff found a blank transfer request form in her SID mailbox. *Id.* at ¶ 28.

Later on December 11, 2009, Plaintiff met with Defendant Paiz regarding the hallway incident with Defendant Smith, her experience at the EEOC training class, and the blank transfer request form.  *Id.* at ¶ 28.  Plaintiff expressed concerns for her safety if she remained at ROP, but she desired to continue working at ROP.  *Id.*  Defendant Paiz stated to Plaintiff that she could not have Plaintiff working at ROP under those circumstances.  *Id.*  Plaintiff, therefore, agreed to accept a temporary 45-day assignment to the burglary unit.  *Id.  See also* (Docs. 218-14, 218-15, and 218-17).  Plaintiff's transfer to the burglary unit did not result in a demotion or change in pay grade.  (Doc. 115) at ¶¶ 6 and 7.  Although Plaintiff's opportunities for overtime pay were more limited in the burglary unit compared to ROP, she did have overtime pay opportunities and accrued benefits while at the burglary unit.  *Id.* at 8; (Doc. 218-1) at ¶¶ 31-33.

In February 2010, at the end of the 45-day temporary assignment period, Plaintiff met with Defendant Paiz who stated to Plaintiff that she needed more time to work on the issues at ROP including working with Defendant Schultz to remove supervisors who Defendant Schultz indicated should be allowed to retire in order "to save face."  (Doc. 218-1) at ¶ 35.  Plaintiff indicated to Defendant Paiz that she would not go back to ROP considering the safety and work issues there.  *Id.* Plaintiff agreed to a second 45-day temporary assignment to the burglary unit. *Id.*

On April 26, 2010, Plaintiff discovered that her cubicle at ROP was empty and that her belongings had been boxed and placed in another room.  *Id.* at ¶ 37.

On April 28, 2010, at the end of the second 45-day temporary assignment period, Plaintiff met with Commander Harold Prudencio, Lieutenant Harold Medina, and Sergeant Sullivan, her chain of command at the burglary unit. *Id.* at ¶ 39. Plaintiff expressed her wish to go back to the ROP assignment, but she still had unaddressed concerns about the work environment at ROP. *Id.* Plaintiff asked Commander Prudencio to meet with Defendant Schultz. *Id.* Plaintiff, then, consented to remain at the burglary unit beyond the 45-day temporary assignment period. (Doc. 115) at ¶ 10.

In July 2010, Defendant Paiz sent Plaintiff an email asking whether Plaintiff wanted to go back to ROP since the Lieutenant and Commander are "new people" or if she preferred to stay in the burglary unit until such time as a certain individual retires. (Doc. 218-16). Plaintiff replied, "Thank you so much for the e-mail. I appreciate it very much!" *Id.*

In October 2010, Plaintiff's brother, an APD police officer, warned Plaintiff that Defendant Gagne was watching her home in an unmarked vehicle. (Doc. 218-1) at ¶ 40.

Also, in October 2010, Defendant Knox and SID Commander West, conducted an IA investigation to determine whether Plaintiff had purchased alcohol while off-duty and transported it in her take-home vehicle in violation of City policy. *Id.* at ¶¶ 42 and 43. Defendant Knox informed Plaintiff that the investigation was ordered from "the top." *Id.* at ¶ 42. Plaintiff's rights as a City employee were violated when APD refused to provide her with evidence of the policy violation. *Id. See also* (Doc. 218-18) at § 20.1.4 ("Prior to any administrative interview being conducted sufficient information shall be disclosed to reasonably apprise the officer of the allegations."). Also, Commander West no longer worked for IA, but, nonetheless, was involved in the IA investigation and knew about Plaintiff's initial complaint regarding a hostile work environment and sexual harassment. (Doc. 218-1) at ¶ 43.

An 80-hour suspension and revocation of Plaintiff's take-home vehicle privileges for 14 days was recommended for the policy violation. *Id.* Plaintiff responded to the recommendation by writing a letter to Defendant Schultz, who, in February 2011, reduced the suspension to 40 hours, but upheld the take-home vehicle sanction. *Id.*; (Doc. 218-23). As a result of this discipline, Plaintiff filed another EEOC complaint. (Doc. 218-1) at ¶ 44. Plaintiff also claims that she was ineligible to apply for a promotion for a year, because of the disciplinary action. *Id.* at ¶ 43. In March 2011, Plaintiff appealed the disciplinary action and the matter was set for a hearing in May 2013, a hearing Plaintiff maintains was unfair due to actions by the City's Human Resources Department. *Id.* at ¶ 46.

Also, in March 2011, APD Deputy Chief Paul Feist, a non-Defendant, apparently ordered Plaintiff to return to ROP. (Doc. 218-20). Plaintiff responded to this order by notifying Deputy Chief Feist that she did not feel safe returning to ROP because of Defendant Gagne's behavior and because the environment there had not changed. *Id.* Deputy Chief Feist replied that Plaintiff may choose to remain in the burglary unit on a permanent basis, return to ROP, or go to the field. (Doc. 218-19). Plaintiff wrote back to Deputy Chief Feist, stating that she felt like she was "being coerced" to leave ROP, because APD would not address the hostile work environment and disparate treatment issues at ROP. (Doc. 218-21). Plaintiff, nonetheless, chose a transfer to the burglary unit. *Id.*

In April 2011, Plaintiff's personal belongings from her ROP cubicle were returned to her. *Id.* at ¶ 38. Plaintiff found in the box of belongings a shoelace tied like a noose, "trash," and a picture of Plaintiff waiving goodbye. *Id.* It is undisputed that the logo for ROP is a noose. (Doc. 218-11) at 5.

Despite Plaintiff's claim that she could not apply for a promotion for a year after the February 2011 disciplinary action involving the purchase of alcohol and the take-home vehicle, Defendant Schultz allowed Plaintiff in the early fall of 2011 to participate in the sergeant promotional process.  (Doc. 218-1) at ¶ 49.  In November 2011, Plaintiff took the written portion of the sergeant's exam which required a passing score of 70%.  *Id.* at ¶ 50.  Plaintiff failed the test by receiving a 69% score.  *Id.*  Plaintiff challenged the answer to one of the questions she incorrectly answered, an answer which Plaintiff believed "others" had received credit for.  *Id.* at ¶ 51.  Plaintiff contacted Loc Truong, a non-Defendant and Human Resources Deputy Director, to challenge that answer.  *Id.*  Truoung addressed the issue with APD Commander Macario Page, another non-Defendant, who decided not to consider Plaintiff's challenge.  *Id.*  Thereafter, Plaintiff filed another EEOC complaint.  *Id.*

In December 2011, the Albuquerque Journal published an article entitled "115 Officers on Possible Sanction List."  *Id.* at ¶ 47.  The article referred to a list, available on the New Mexico Law Enforcement Academy (NMLEA) website, of officers who had been disciplined.  *Id.* at ¶ 48.  Plaintiff's name appeared on the list.  *Id.* Defendant Schultz was a member of the NMLEA board at that time.  *Id.*

Plaintiff "has since been promoted and currently holds the rank of sergeant in APD." (Doc. 115) at ¶ 12.

## C. Discussion

### 1. The Motion for Summary Judgment

#### a. Summary Judgment Standard

Summary judgment is appropriate if there is no genuine dispute as to a material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).[5]  When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.  *Applied Genetics Intl, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990).  The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Only then does the burden shift to the non-movant to come forward with evidence showing that there is a genuine issue of material fact.  *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).  An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant.  *Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir.1996) (citation omitted).  The non-moving party may not avoid summary judgment by resting upon the mere allegations or denials of his or her pleadings.  *Bacchus Indus., Inc.*, 939 F.2d at 891.

#### b. Count II:  Section 1983 and Section 1985 Conspiracy Claims

Conspiracy Defendants argue that they are entitled to qualified immunity for any alleged violation of Plaintiff's right to substantive or procedural due process under the Fourteenth Amendment, and that Plaintiff has failed to come forward with any evidence of a "conspiracy" to deprive Plaintiff of those Fourteenth Amendment due process rights.  Accordingly, Conspiracy Defendants conclude they are entitled to summary judgment on Plaintiff's Section 1983 and

---

[5]Rule 56 was amended effective December 1, 2010, but the standard for granting summary judgment remains unchanged.

Section 1985 conspiracy claims raised in Count II.  The Court will address first whether Plaintiff has come forward with evidence from which a reasonable jury could find that a conspiracy existed amongst the Conspiracy Defendants to punish or retaliate against Plaintiff by "depriving her of wages, benefits, and the opportunity for career advancement or promotion, and terminating her employment."  (Doc. 88) at ¶¶ 101 and 102.

In the Tenth Circuit, a federal conspiracy action brought under either Section 1983 or Section 1985 "requires at least a combination of two or more persons acting in concert and an allegation of a meeting of the minds, an agreement among the defendants, or a general conspiratorial objective."  *Brooks v. Gaenzle*, 614 F.3d 1213, 1227–28 (10th Cir. 2010).  To demonstrate a general conspiratorial objective, the plaintiff must show "that there was 'a single plan, the essential nature and general scope of which [was] known to each person who is to be held responsible for its consequences.'"  *Snell v. Tunnell*, 920 F.2d 673, 702 (10th Cir. 1990) (quoting *Hoffman-LaRoche, Inc. v. Greenberg*, 447 F.2d 872, 875 (7th Cir. 1971)).  To be actionable, a conspiracy must also result in an injury or deprivation.  *Starr v. Kober*, 642 F. App'x 914, 920 (10th Cir. 2016) (plaintiff must allege specific injury from Section 1983 conspiracy); *D'Addabbo v. United States*, 316 F. App'x 722, 727 (10th Cir. 2008) (elements of Section 1985(3) claim include "an injury or deprivation resulting" from the conspiracy).

The Court recognizes that "[d]irect evidence of a conspiracy is rarely available, and the existence of a conspiracy must usually be inferred from the circumstances."  *Fisher v. Shamburg*, 624 F.2d 156, 162 (10th Cir.1980) (citing *Loew's, Inc. v. Cinema Amusements,* 210 F.2d 86, 93 (10th Cir. 1954)).  The Tenth Circuit has explained that in the context of a motion for summary judgment, a plaintiff must provide evidence of communication between defendants or else "there is nothing to give rise to the inference that they conspired."  *Abercrombie v. City of Catoosa,*

*Okl.*, 896 F.2d 1228, 1230–31 (10th Cir. 1990).  In addition, "[p]arallel action—or inaction ...—does not necessarily indicate an agreement to act in concert."  *Brooks*, 614 F.3d at 1228 (quoting *Salehpoor v. Shahinpoor,* 358 F.3d 782, 789 (10th Cir. 2004)) (internal quotation marks omitted)).

Plaintiff cites several cases to support her argument that she has provided sufficient evidence from which a reasonable jury could find a conspiracy.  Unfortunately for Plaintiff, three of those cases address the issue of whether the plaintiff has alleged sufficient facts in a complaint to support a plausible conspiracy claim, a much different situation than a plaintiff opposing a motion for summary judgment where the plaintiff must provide evidence to demonstrate a genuine issue of material fact.  *See Brever v. Rockwell Int'l Corp.*, 40 F.3d 1119 (10th Cir. 1994); *Hunt v. Central Consol. School Dist.*, 951 F.Supp.2d 1136 (D.N.M. 2013); *Kivanc v. Ramsey*, 407 F.Supp.2d 270 (D.D.C. 2006), *abrogated by Harvey v. Kasco*, 109 F. Supp. 3d 173, 178 (D.D.C. 2015).  Moreover, Plaintiff cites *Gunter v. Morrison* in which the mayor and counselmen directly commented that the plaintiff was denied a promotion because he sued the city.  497 F.3d 868, 873 (8th Cir. 2007).  *Gunter* is distinguishable from this case in that there is no such direct evidence here.  Plaintiff next cites *Dickerson v. U.S. Steel Corp.*, to assert that acquiescence in illegal activities is enough to demonstrate participation in a conspiracy. [6]  439 F.Supp. 55, 67 (E.D. Pa. 1977) ("If a party has the potential to stop illegal activity but fails to act to do so, and sits idly by, then that party may be said to have impliedly conspired in such illegalities.").  However, no court in the Tenth Circuit has cited *Dickerson* and only three other district courts have cited it.  Even if acquiescence could constitute conspiratorial conduct, Tenth

---

[6] Plaintiff also cites *Hunt*, a case from this District, to support her assertion that acquiescence can show participation in a conspiracy.  Plaintiff, however, provides an incorrect citation for *Hunt*.  Without a correct citation, the Court will not search through the 124-page opinion to find the portion of the opinion Plaintiff refers to.

Circuit caselaw requires a plaintiff to demonstrate that the defendants acted in concert and that there was a meeting of the minds or agreement to a plan.

Here, Plaintiff alleges in the Second Amended Complaint a conspiratorial plan to punish and retaliate against Plaintiff by "depriving her of wages, benefits, and the opportunity for career advancement or promotion, and terminating her employment."  (Doc. 88) at ¶¶ 101 and 102. Plaintiff's allegations regarding a deprivation of wages and benefits are apparently based on her assignments to the burglary unit.  The undisputed evidence, however, shows that the assignments did not affect Plaintiff's wages.  Without an adverse effect on Plaintiff's wages, i.e., harm to Plaintiff, a reasonable jury could not find that Conspiracy Defendants conspired to punish or retaliate against Plaintiff by depriving her of wages.

The Court, nevertheless, acknowledges that Plaintiff's opportunity for overtime pay, a benefit, decreased as a result of the assignments to the burglary unit.  The undisputed evidence shows that although Defendant Paiz, who is not a Conspiracy Defendant, and others, like Commander Prudencio, Lieutenant Medina, Sergeant Sullivan, and Deputy Chief Feist, all non-Defendants, were instrumental in assigning Plaintiff to the burglary unit, there is some evidence that Defendant Schultz, a Conspiracy Defendant, was involved in the assignments to the extent that he did not immediately replace supervisors at ROP.  Plaintiff, however, has not provided any evidence, direct or circumstantial, that Defendant Schultz communicated with the other Conspiracy Defendants so that a reasonable jury could infer that Defendant Schultz agreed to act in concert with the other Consolidated Defendants to deprive Plaintiff of overtime opportunities by assigning her to the burglary unit.  A conspiracy of one cannot exist.  Consequently, Plaintiff has not come forward with evidence from which a reasonable jury could find that Conspiracy Defendants conspired to punish or retaliate against Plaintiff by depriving her of benefits.

Plaintiff further contends that Conspiracy Defendants conspired to deprive her of opportunities for career advancement or promotion.  Plaintiff provides evidence that (1) her personnel file contains Defendant Hubbard's 2009 false accusation that Plaintiff failed to provide him with cover and deviated from a surveillance; (2) Plaintiff was unfairly disciplined in February 2011 for purchasing alcohol and transporting it in her take-home vehicle, thereby making her ineligible to apply for a promotion for a year; (3) the Human Resources Department deprived Plaintiff of a fair opportunity to prepare her appeal of the February 2011 disciplinary action; and (4) her November 2011 sergeant's written exam was unfairly scored.

With respect to Defendant Hubbard's false accusation that Plaintiff did not provide him with cover and deviated from a surveillance, Plaintiff has not presented any evidence that this accusation resulted in a disciplinary action.  Plaintiff also has not presented evidence that Defendant Hubbard's accusation, although in Plaintiff's personnel file along with Plaintiff's response, provided a basis for depriving Plaintiff of any career advancement or promotion. Additionally, there is no evidence that Defendant Hubbard communicated with other Conspiracy Defendants so that a reasonable jury could infer that Defendant Hubbard agreed to act in concert with the other Conspiracy Defendants to harm Plaintiff's ability to advance her career or obtain a promotion.

Next, Plaintiff's assertion that the February 2011 disciplinary action triggered a one-year period in which she could not apply for a promotion is belied by the fact that Defendant Schultz, a Conspiracy Defendant who had actually reduced that discipline, allowed Plaintiff to take the sergeant's exam in November 2011, only nine months after Plaintiff was disciplined.  Moreover, Plaintiff has not produced any evidence that this disciplinary action negatively affected her ability to obtain a promotion.  In fact, Plaintiff was later promoted to the rank of sergeant.

Furthermore, except for a vague reference that the investigation of Plaintiff's alleged purchase of alcohol and use of take-home vehicle was ordered from "the top," Plaintiff has not produced any evidence that Defendant Knox, who conducted the investigation leading to the discipline, and Defendant Schultz communicated with each other or with the other Conspiracy Defendants so that a reasonable jury could infer that Defendant Knox, Defendant Schultz, and the other Conspiracy Defendants agreed to act in concert to harm Plaintiff's ability to advance her career.

In addition, Plaintiff has not provided any evidence that her inability to obtain a fair appeal of the February 2011 disciplinary action adversely affected her ability to be promoted to the rank of sergeant, a promotion Plaintiff subsequently obtained.  The purported unfair appeal also did not involve Conspiracy Defendants.  Plaintiff states, instead, that the unfair actions came from the Human Resources Department.

With regard to the November 2011 sergeant's written exam, Commander Page and Truong, the persons responsible for not considering Plaintiff's challenge to an answer, are not Defendants, let alone Conspiracy Defendants.  Plaintiff simply does not provide any evidence, direct or circumstantial, that any of the Conspiracy Defendants were involved in the decision not to consider Plaintiff's challenge.  Moreover, although Plaintiff states that "others had been given credit for that question," she does not claim that those "others" were male and that she was, therefore, disparately treated because of gender, the underlying basis for her lawsuit.

In sum, Plaintiff has not come forward with either direct or circumstantial evidence that Conspiracy Defendants acted in concert and agreed to deprive Plaintiff of any opportunities for career advancement or promotions.  In fact, Plaintiff's career opportunities apparently advanced unhindered by Conspiracy Defendants' actions.  A reasonable jury, therefore, could not find that

Conspiracy Defendants conspired to punish or retaliate against Plaintiff by depriving her of career advancement and promotion opportunities.

Finally, Plaintiff alleges that Conspiracy Defendants conspired to terminate her employment at APD.  Because Plaintiff still works at APD, that allegation simply lacks a factual basis.  Plaintiff also alleges a conspiracy to force Plaintiff to leave the ROP team.  The following undisputed evidence, viewed in the light most favorable to Plaintiff, shows incidents involving various Conspiracy Defendants leading to Plaintiff's final permanent assignment to the burglary unit:  (1) a sexist remark by Defendant Gagne about taking "a skirt," (2) sexual harassment by Defendant Smith, (3) sexual harassment by Defendant Potter, (4) a punctuality memo issued by Defendant Hubbard based on Defendant Gagne misinforming Plaintiff about a meeting, (5) Defendant Smith's failure to address Plaintiff's concerns about a hostile work environment, (6) failure by Defendant Hubbard to provide Plaintiff backup during a warrant round-up, (7) angry questioning by Defendants Potter and Gagne in a closed office directed at Plaintiff regarding her initial complaint of a hostile work environment and sexual harassment, (8) Defendant Hubbard informing the ROP team of new restrictive guidelines which ROP members believed were meant to "push" Plaintiff out, (9) Defendant Hubbard's false accusation that Plaintiff did not provide cover and deviated from a surveillance, (10) Defendant Smith's actions forcing Plaintiff into a hallway wall, (11) Defendant Schultz's order that Plaintiff attend mandatory EEOC training which made Plaintiff uncomfortable, (12) Defendant Schultz's reluctance to remove SID supervisors until they retired, (13) Defendant Gagne's surveillance of Plaintiff's home, (14) Defendant Knox's improper investigation, ordered from "the top," on the charge that Plaintiff purchased alcohol and transported it in her take-home vehicle, and (15) a reference in a blog to Plaintiff's initial complaint which Defendant Schultz and West were privy to.

Plaintiff provides evidence of other incidents leading up to her permanent assignment to the burglary unit, but she does not provide evidence that they are directly or even indirectly connected to Conspiracy Defendants.  Viewing the evidence in the light most favorable to Plaintiff, those incidents include (1) Defendant Hudson's failure to address Plaintiff's concerns about the work environment at ROP, (2) a blank transfer form in Plaintiff's ROP mailbox, (3) Defendant Hudson's indication that the new restrictive guidelines were in place to push Plaintiff out of ROP, (4) removal of Plaintiff's personnel belongings from her ROP cubicle, (5) assignments to the burglary unit by Defendant Paiz and non-Defendants, and (6) a SID commander's involvement in the IA investigation of Plaintiff's purchase of alcohol and its transportation in a take-home vehicle.

The above incidents, whether directly attributed to Conspiracy Defendants or not, fail to demonstrate that Conspiracy Defendants communicated with each other so as to create an inference that they acted in concert and agreed to force Plaintiff out of ROP as a way of punishing or retaliating against Plaintiff.  Parallel action or inaction of the various Conspiracy Defendants also does not create an inference of a conspiracy.  A reasonable jury, thus, could not find that Conspiracy Defendants conspired to force Plaintiff out of ROP.

In conclusion, Conspiracy Defendants are entitled to summary judgment on Count II, because the undisputed facts demonstrate Conspiracy Defendants did not engage in a conspiracy under either Section 1983 or Section 1985.  That being so, the Court will not address Conspiracy Defendants' assertion of qualified immunity for the Fourteenth Amendment due process claims underlying the conspiracy causes of action.

   *2.  Conspiracy Defendants' Request for an Award of Attorney's Fees and Costs*

Conspiracy Defendants request an award of attorney's fees and costs if they prevail on the Motion for Summary Judgment.  However, Conspiracy Defendants do not support this request with citation to legal authority or with supporting evidence.  *See* D.N.M. LR–Civ. 7.3.  Hence, the Court denies Conspiracy Defendants' request for attorney's fees and costs.

IT IS ORDERED that

1.  "Defendants Raymond Schultz, William Roseman, David Hubbard, Cedcil [sic] Knox, Robert Smith, J.R. Potter and Kevin Gagne's Motion for Summary Judgment Based on Qualified Immunity and on Plaintiff's Inability to Support Claims" (Doc. 112) is granted;

2.  Plaintiff's Rule 56(d)(1) request to defer ruling on the Motion for Summary Judgment is denied;

3. Plaintiff's unsworn expert reports are stricken;

4.  summary judgment will be entered in favor of Conspiracy Defendants as to Count II of the Second Amended Complaint (Doc. 88);

5.  Count II will be dismissed with prejudice; and

6.  Conspiracy Defendants' request for an award of attorney's fees and costs is denied.

UNITED STATES DISTRICT JUDGE